361 So.2d 640 (1978)
In re Jerry Wayne JACOBS
v.
STATE of Alabama.
Ex parte Jerry Wayne Jacobs.
SC 2808.
Supreme Court of Alabama.
May 19, 1978.
Rehearing Denied August 11, 1978.
John L. Carroll and Morris S. Dees, Jr. Montgomery, for petitioner.
*641 William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for the State.
PER CURIAM.
This case concerns the constitutionality of Act 213, 1975 Ala. Acts, p. 701, et seq.,[1] which provides penalties for certain aggravated homicides. The Court of Criminal Appeals affirmed the conviction of murder in the first degree, including the sentence of death, and held the Act constitutional. We affirm.
A full statement of the facts is contained in the opinion of the Court of Criminal Appeals, 361 So.2d 607, but briefly stated, the facts are, that on July 17, 1976, Jerry Wayne Jacobs, his brother, John Jacobs, and his nephew, Thomas Eugene Brown, went to the Star Pool Hall in Cullman with the intent to rob Walter Robert Knight. When Knight left the pool hall, the three offered him a ride, which he took. A short while later, while Jacobs pointed a sawed-off.22 caliber rifle at him, Knight was robbed of several hundred dollars.
The three men then drove Knight to a secluded section of Highway U.S. 31. Knight's shoes were removed and Jacobs took him approximately one hundred yards into the woods. Brown testified that while he was waiting at the car, he heard Knight plead for his life. Immediately thereafter, he heard a shot. Jacobs, in a statement entered into evidence, admitted shooting Knight. He contends, however, that Brown shot him two additional times after the Jacobses had returned to the car.
The State Toxicologist testified that Knight died from two gunshot wounds delivered to the back of the head. No further wounds were found.
Following the incident, the three divided the money and fled the state. Brown surrendered when he returned home to Cullman. The Jacobses were apprehended shortly thereafter in North Carolina.
Pursuant to § 2, 1975 Ala. Acts, p. 701,[2] the jury was not charged as to any lesser offenses. Furthermore, when they returned the guilty verdict, they fixed punishment at death. At the post-trial sentence hearing, the trial judge, after listing the aggravating circumstances, sentenced Jacobs to death.
Jacobs states the issues, as follows:
"I. WHETHER THE ALABAMA CAPITAL-SENTENCING PROCEDURES ARE VIOLATIVE OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE THEY FAIL TO ASSURE THAT THE DEATH PENALTY WILL NOT BE IMPOSED IN AN ARBITRARY OR CAPRICIOUS MANNER AND DO NOT COMPORT WITH DUE PROCESS.
"II. WHETHER THE ALABAMA CAPITAL-SENTENCING PROCEDURES, AS APPLIED IN THIS CASE, VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS BECAUSE THEY RESULTED IN A STANDARDLESS IMPOSITION OF THE DEATH SENTENCE.
"III. WHETHER THE COURT'S CHARGE ON THE PRESUMPTION OF MALICE ARISING FROM THE USE OF A DEADLY WEAPON VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW.
"IV. WHETHER THE TRIAL COURT ERRED IN EXCUSING JUROR MARY RUTH MARTIN FOR HER OPPOSITION TO CAPITAL PUNISHMENT."
The primary contention raised by Jacobs is that Alabama's Death Penalty Act is unconstitutional because it violates the "cruel and unusual punishment" clause of the Eighth Amendment to the United States Constitution.
Initially, it should be noted that this case is not controlled by our recent decision in Harris v. State, 352 So.2d 479 (Ala.1977). That case dealt with Tit. 14, § 319, Code, and involved the narrow constitutional question concerning imposition of the death *642 penalty for one convicted of first degree murder while already serving a life sentence. A plurality of this Court upheld the statute because of the narrow category of the offense on which it was baseda category not expressly addressed, and thus not proscribed, by the United States Supreme Court. See Harris, at 483, 484.
The Act presently before us involves imposition of the death penalty for one convicted of any one of several enumerated aggravated homicides. It was passed in response to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and Hubbard v. State, 290 Ala. 118, 274 So.2d 298 (1973). Without going into the well-known intricacies of the nine separate opinions in Furman, suffice it to say that Alabama's old death statute was rendered unconstitutional, at least, insofar as it gave the jury, as the sentencing authority, a standardless discretion, in fixing the death penalty. See Hubbard, supra. Thereafter, but before several illuminating United States Supreme Court decisions were rendered, the legislature enacted the present Act which takes all discretion in sentencing away from the jury. Furthermore, a bifurcated system was established so that the trial judge, at a subsequent post-trial sentence hearing, could reduce the death sentence to life imprisonment without possibility of parole. § 3, 1975 Ala. Acts, p. 703.[3]
The pertinent provisions of Alabama's sentencing scheme are as follows:
"AGGRAVATED OFFENSES FOR WHICH DEATH PENALTY TO BE IMPOSED; FELONY-MURDER DOCTRINE NOT TO BE USED TO SUPPLY INTENT; DISCHARGE OF DEFENDANT UPON FINDING OF NOT GUILTY; MISTRIALS; REINDICTMENT AFTER MISTRIAL.

"If the jury finds the defendant guilty it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses: . .
* * * * * *
"In such cases, if the jury finds the defendant not guilty, the defendant must be discharged. The court may enter a judgment of mistrial upon failure of the jury to agree on a verdict of guilty or not guilty or on the fixing of the penalty of death. After entry of a judgment of mistrial, the defendant may be tried again for the aggravated offense, or he may be reindicted for an offense wherein the indictment does not allege an aggravated circumstance. If the defendant is reindicted for an offense wherein the indictment does not allege an aggravated circumstance, the punishment upon conviction shall be as heretofore or hereafter provided by law; however, the punishment shall not be death or life imprisonment without parole. (Acts 1975, No. 213, § 2.)
"HEARING AS TO IMPOSITION OF DEATH PENALTY OR LIFE SENTENCE WITHOUT PAROLE AFTER CONVICTION; ADMISSIBILITY OF EVIDENCE; RIGHT OF STATE AND DEFENDANTS TO PRESENT ARGUMENTS.
"If the jury finds the defendant guilty of one of the aggravated offenses listed in section 13-11-2 and fixes the punishment at death, the court shall thereupon hold a hearing to aid the court to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole. In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13-11-6 and 13-11-7. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity *643 to rebut any hearsay statements; provided further, that this section shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama. The state and the defendant, or his counsel, shall be permitted to present argument for or against the sentence of death. (Acts 1975, No. 213, § 3.)
"DETERMINATION OF SENTENCE BY COURT; COURT NOT BOUND BY PUNISHMENT FIXED BY JURY.

"Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death. If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include the following:
"(1) One or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death; and
"(2) Any of the mitigating circumstances enumerated in section 13-11-7 which it finds insufficient to outweigh the aggravating circumstances. (Acts 1975, No. 213, § 4.)
"CONVICTION AND SENTENCE OF DEATH SUBJECT TO AUTOMATIC REVIEW.
"The judgment of conviction and sentence of death shall be subject to automatic review as now required by law. (Acts 1975, No. 213, § 5.)" [Emphasis added.]
Under this statutory scheme, the jury, if it finds a defendant guilty, is mandatorily required to fix the punishment at death. If the jury fails "to agree . . . on the fixing of the penalty of death," the defendant is not discharged; the court may enter a judgment of mistrial.
As we interpret Alabama's sentencing statute in death cases, the jury is powerless to fix any punishment other than death, if they find the accused guilty. Alabama, therefore, does not permit the jury to exercise any discretion in fixing punishment.[4] We find no fault with this. Under this scheme, it is only reasonable to assume that juries will consider the grave consequences of a conviction in reaching their verdict. Cf. Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), wherein the court noted:
". . . In view of the historic record, it is only reasonable to assume that many juries under mandatory statutes will continue to consider the grave consequences of a conviction in reaching a verdict."
Under Alabama's scheme, if the jury refuses to follow the legislative mandate, and does not fix the penalty at death, the statutory scheme acts as a form of safety valve, favorable to the accused, because if one single juror refuses to follow the legislative mandate, and refuses to fix the penalty at death, then the trial court may grant a mistrial.
Under Alabama's scheme for imposition of the death penalty, the jury obviously is not provided with guidelines to aid it in fixing the punishment; in fact, the statute directs the jury, if it finds the accused guilty, to fix the punishment at death. The jury has no discretion to fix any other penalty. If that was the end of the matter, Alabama's statutory scheme would be unconstitutional under Woodson v. North Carolina, *644 supra. If there was no way under Alabama law for the judiciary to check any arbitrary and capricious exercise of the power of the jury to fix the penalty of death through a review of that penalty, we would agree that Woodson controls. But, in Woodson, the Supreme Court said:
". . . North Carolina's mandatory death penalty statute provides no standards to guide the jury in its inevitable exercise of the power to determine which first-degree murderers shall live and which shall die. And there is no way under the North Carolina law for the judiciary to check arbitrary and capricious exercise of that power through a review of death sentences. Instead of rationalizing the sentencing process, a mandatory scheme may well exacerbate the problem identified in Furman by resting the penalty determination on the particular jury's willingness to act lawlessly. While a mandatory death penalty statute may reasonably be expected to increase the number of persons sentenced to death, it does not fulfill Furman's basic requirement by replacing arbitrary and wanton jury discretion with objective standards to guide, regularize, and make rationally reviewable the process for imposing a sentence of death." (Emphasis added.)
Alabama, unlike North Carolina, in Woodson, provides a method to check any capricious and arbitrary exercise of the power by the jury to fix the punishment at death. In Alabama, the jury is not the body which finally determines which murderers must die and which must not. In fact, Alabama's statute mandatorily requires the court to "hold a hearing to aid the court to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole,"[5] and specifically provides that the court may refuse to accept the death penalty as fixed by the jury and may "sentence" the defendant to death or life without parole. Code of Ala.1975, § 13-11-4. That section provides that if the court imposes a "sentence of death" it must set forth, in writing, the basis for the sentence. Furthermore, any conviction and sentence of death is subject to automatic appellate review, a procedure commended by the Supreme Court of the United States in Coleman v. Alabama, 377 U.S. 129, 84 S.Ct. 1152, 12 L.Ed.2d 190 (1964).
The State contends that under Alabama's statutory scheme, the fixing of the penalty of death by the jury is merely advisory. The Court of Criminal Appeals agreed with the State and held that the jury verdict was advisory in its opinion in this case. In the sense that the verdict is not final, it may have advisory characteristics; in any event, it is certainly unlike the jury verdict in Woodson, which could not be reviewed or revised by the trial court, and is more like the verdict in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In fact, Dobbert is authority to uphold the constitutionality of Alabama's statutory scheme, because although Florida gave its jury the power to recommend a sentence, and Alabama gives the jury no discretion or power to fix a sentence other than death if the accused is found guilty in specified cases, the Florida statute did not give the jury final sentencing authority; neither does Alabama.
Alabama's sentencing scheme is similar to that in Florida, in that a jury verdict is a necessary step in the scheme but the jury is not the sentencing authority in either Florida or Alabama.
The Court of Criminal Appeals has spelled out specifically how death sentences, reviewed under Alabama's automatic appeal statute, have been reversed and the causes remanded for new trials. This Court has carefully reviewed each point raised by the accused in his petition, which was granted as a matter of right because of the sentence of death. We are familiar with other cases reviewed by this Court in the last decade involving death sentences and we are convinced that the sentence here was not arbitrarily or capriciously entered. *645 We are further convinced that trial juries will consider the serious consequences of a guilty verdict, and will either refuse to fix the penalty at death, or will acquit the defendant. In any event, the trial judge must hold a hearing to consider aggravating and mitigating circumstances and may sentence the defendant to life without parole.
We have reviewed each issue argued by the accused and we are of the opinion that Jacobs' conviction and sentence are due to be affirmed.
AFFIRMED.
BLOODWORTH, MADDOX, FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., concurs in part, and dissents in part.
JONES and SHORES, JJ., dissent.
TORBERT, Chief Justice (concurring in part; dissenting in part):
Capital punishment and the procedures under which it may be lawfully imposed present serious moral issues and difficult constitutional questions. The Alabama Legislature resolved the moral issues arising from the death penalty by enacting a new capital punishment law in 1975. Title 13, chapter 11, Code of Alabama 1975 (Act No. 213, Regular Session 1975). Petitioner was convicted and sentenced to death under this law, and he attacks the constitutionality of the capital sentencing procedures prescribed under Alabama law.
The United States Supreme Court, in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), disapproved those statutory formulations which allow for the arbitrary or capricious imposition of the death penalty. Then in 1976 the Court approved three post-Furman death penalty statutes which focused the sentencing authority's "attention on the particularized nature of the crime and the particularized characteristics of the individual defendant." Gregg v. Georgia, 428 U.S. 153, 206, 96 S.Ct. 2909, 2941, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).
The new Alabama death penalty law restricts the crimes for which the death penalty can be imposed to fourteen specific aggravated offenses. Sections 13-11-1, -2, Code of Alabama 1975. If the defendant is convicted, then the trial judge must conduct a sentencing hearing to review evidence in aggravation and in mitigation of the crime. Id. § 13-11-3. The trial judge, as the sentencing authority, must weigh the aggravating and mitigating factors present before imposing the sentence. Id. § 13-11-4. Therefore, these provisions require a bifurcated proceeding with a sentencing hearing wherein the particularized circumstances surrounding the offense and the offender are considered. This, without further restriction, would in my mind satisfy constitutional requirements.
However, in section 13-11-2, Code of Alabama 1975, the Legislature has ordered that the fourteen offenses comprising capital murder "shall not include any lesser offenses." Though the jury does not actually determine the final sentence, it is informed that it "shall fix the punishment at death" if it should find the defendant guilty of capital murder. Thus, the jury in this case was faced with but three alternatives: find the defendant guilty and "sentence" him to death, acquit him, or fail to agree as to the verdict or sentence. Id. § 13-11-2(a), (c).
The petitioner argues that the Alabama capital sentencing procedure (especially the features mentioned in the preceding paragraph) allows for the arbitrary, capricious, and standardless imposition of the death penalty, and that the procedure does not satisfy due process requirements, all in violation of the eighth and fourteenth amendments to the United States Constitution. "[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, [the court must] presume its validity," Gregg v. Georgia, supra, 428 U.S. at 175, 96 S.Ct. at 2926, and *646 for the reasons given below, I agree with the majority that the Alabama capital sentencing statute is not constitutionally defective.
The mere fact that a sentence of death attaches to the jury's verdict of guilty (section 13-11-2(a)) does not render the procedure unconstitutional when the statute is examined as a whole. The jury, when deliberating on a verdict, is only concerned with the issue of the defendant's guilt or innocence. If the verdict is guilty, the jury has no discretion in setting a sentence: the statute provides only for the penalty of death. If the verdict is not guilty, the jury has no discretion in determining the defendant's fate: the statute requires that he be discharged. The statute's prohibition of any charges as to lesser included offenses further restricts the discretion of the jury.
Though these components appear to parallel the mandatory death penalty statutes invalidated in Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), there are several major distinctions between those statutes and the Alabama death penalty law which operate to sustain the Alabama statute. First, the capital jury in Alabama cannot convict a defendant for a lesser included offense; its only options are guilty, not guilty, or it can refuse to return a verdict or to sentence the defendant to death. Thus, the jury, if properly instructed, does not have the "de facto sentencing discretion" that was condemned in Roberts v. Louisiana, supra, at 335, 96 S.Ct. 3001. Second, the jury under the Alabama statute has the responsibility only to determine guilt or innocence; if the defendant is found guilty, the trial judge must hold a post-trial hearing to receive evidence in aggravation and in mitigation on the issue of sentence. Section 13-11-3, Code of Alabama 1975. The judge must weigh the statutorily defined aggravating and mitigating circumstances present before imposing a sentence, and he is not bound by the jury's verdict and sentence. Id. § 13-11-4. This statutorily required, post-conviction sentencing hearing, wherein the trial judge hears evidence as to aggravating and mitigating circumstances, cures any constitutional defect which might have arisen through the jury's supposed sentencing authority.
It is not constitutionally required that the jury have an input in the sentencing phase of the trial in capital cases. Richmond v. Arizona, 434 U.S 1323, 98 S.Ct. 8, 54 L.Ed.2d 34 (Rehnquist, Circuit Justice, 1977); State v. Richmond, 114 Ariz. 186, 560 P.2d 41 (1976), cert. denied, 433 U.S. 915, 98 S.Ct. 8, 54 L.Ed.2d 34 (1977); State v. Simants, 197 Neb. 549, 559, 250 N.W.2d 881, 888, cert. denied, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977) ("The relative merits of [jury sentencing] or [judge sentencing] is for legislative and not judicial determination."); State v. Bayless, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976); see Gregg v. Georgia, supra, 428 U.S. at 192, 96 S.Ct. 2909 (flaws in jury sentencing); Proffitt v. Florida, supra, 428 U.S. at 252, 96 S.Ct. 2960 (greater consistency in judicial sentencing). The trial judge is the sentencing authority under the Alabama death penalty law, and his decision is carefully guided by specified statutory considerations.
The standardless discretion which was attacked in Furman is not allowed under the Alabama statute; in accordance with Furman, "the decision to impose [capital punishment under Alabama law is] guided by standards so that the sentencing authority [will] focus on the particularized circumstances of the crime and the defendant." Gregg v. Georgia, supra, 428 U.S. at 199, 96 S.Ct. at 2937. Section 13-11-4, Code of Alabama 1975, requires the judge to make written findings as to any aggravating and/or mitigating factors present in the case, thereby facilitating appellate review:
"Where the sentencing authority is required to specify the factors it relied upon in reaching its decision, the further safeguard of meaningful appellate review is available to ensure that death sentences are not imposed capriciously or in a freakish manner." *647 Gregg v. Georgia, supra, at 195, 96 S.Ct. at 2935. The Court of Criminal Appeals and this court, by statute (§ 12-22-150, Code of Alabama 1975) and by court rule (amended Rule 39(c), Ala.R.App.P.) respectively, must review the decision of the trial court where the death penalty is imposed. This mandatory review guarantees that, before a defendant can be executed in Alabama, the sentence of death must be found to be appropriate by both the Court of Criminal Appeals and this court after a review of the aggravating and mitigating circumstances found in the case by the trial judge.
However, this appellate review safeguarda substantial protection for the defendant in Alabamais nonexistent unless the trial judge conducts a full and fair sentencing hearing and enters complete written findings as to aggravating and mitigating circumstances. The petitioner did not receive a proper sentencing hearing in this case, and for this reason I would reverse and remand so that the trial judge could conduct a constitutionally valid sentencing hearing.
The sentencing hearing must not be a constitutional facade; though the burden of establishing mitigating circumstances must realistically rest with the defendant (State v. Knapp, 114 Ariz. 531, 562 P.2d 704 (1977); State v. Richmond, supra), this does not relieve the trial court from the requirements of due process in the sentencing hearing. Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); State v. Lee, 114 Ariz. 101, 559 P.2d 657 (1976). In Nebraska the trial court in capital cases must order a presentence investigation and must set out a general order of procedure prior to the commencement of the sentencing hearing. State v. Simants, supra. In other words, the sentencing hearing must involve a serious attempt to examine the aggravating and mitigating factors surrounding the offense and the offender. The defendant cannot waive this right to due process through the failure of his attorney to make an objection. Gardner v. Florida, supra.
The trial judge in this case failed to require a presentence report, and by his own words stated that the sentencing hearing would be "somewhat informal." Record at 583. The record reveals that the trial judge pictured himself as a "sentence reducer," not as the sentencing authority that must carefully weigh the aggravating and mitigating circumstances; the burden was effectually placed on the petitioner to show why he should not die:
[MR. BURTTRAMTHE DISTRICT ATTORNEY]: "I think at this time it's the responsibility of the defense and I think, if this hearing is to go forward, it's now time for him to show his mitigating circumstances.
"THE COURT: In other words, the State is insisting on the death sentence [based on the jury verdict]?
"MR. BURTTRAM: We are insisting on the death sentence, Your Honor.
"THE COURT: Well, since the defendant has asked that you go ahead, do you have anything else?
"MR. BURTTRAM: No, Your Honor. At this time, we rest entirely on the jury verdict with the opportunity to rebut any mitigating circumstances the defendant would offer.
"THE COURT: Well, I think that would be correct. I think you would be in the position to rely on the jury verdict. You know, heretofore this Court would be powerless to change a jury verdict. The Court could not change a jury verdict up until the passage of this law.
"And since any change in it would definitely be for the defendant's benefit, I think the State is entitled to simply rest on its statement that they insist on the jury verdict.
"As I stated, this will be somewhat informal."
Record at 582-83. This confusion as to the proper role of the trial judge is further shown by the following statement of the judge at the sentencing hearing:
"Sometimes, in the maze of technicalities inflicted upon us by the Federal Court and by the Appellate Courts, we loose *648 [sic] sight of the real issue in the case; and that is whether or not the defendant is guilty as charged."
Record at 597. Obviously, guilt is not the issue in the sentencing hearing; rather, the judge must consider the particularized circumstances surrounding the offense and the offender.
The Supreme Court has stated:

"Furman mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.
"It is certainly not a novel proposition that discretion in the area of sentencing be exercised in an informed manner."
Gregg v. Georgia, supra, 428 U.S. at 189, 96 S.Ct. at 2932. When a defendant's life is at stake, the trial judge cannot hold the defendant or his attorney solely responsible for informing the court as to mitigating circumstances. A presentence report could have revealed that the petitioner had "no significant history of prior criminal activity"a mitigating circumstance under section 13-11-7(1), Code of Alabama 1975. See Brief of Petitioner at 40 n. 42. The evidence adduced at trial indicated that the petitioner had been drinking all night before the day of the robbery-murder. Record at 499. This might require a finding that the "capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired"another mitigating circumstance under section 13-11-7(6). See Brief of Petitioner at 40 n. 42. The trial judge had the responsibility, under the eighth and fourteenth amendments to the United States Constitution, to closely examine the statutorily defined mitigating circumstances and to make specific findings in regard to each of them. Unless this is done, the trial judge cannot fairly weigh the aggravating and mitigating circumstances, and the appellate court certainly cannot adequately review his sentencing decision.
On October 14, 1976 the trial judge submitted his written findings and sentencing decision arising from the prior sentencing hearing. See Record at 17-18. The judge found three statutory aggravating circumstances to be present: the murder was committed while the petitioner was engaged in the robbery of the victimsection 13-11-6(4), the murder was intentionally committed to avoid or prevent a lawful arrest section 13-11-6(5), and the murder was "especially heinous, atrocious or cruel"section 13-11-6(8).
Though I agree that the first and third aggravating circumstances were present in this case, I do not believe that the facts support a finding that the "capital felony was committed for the purpose of avoiding or preventing a lawful arrest . . .."
The trial judge found:
"that the evidence showed that the defendant's brother was an accomplice in this crime and that the defendant's brother was known to the victim and, had the victim not been killed, in all probability he would have brought about the arrest of the defendant's brother and, possibly, of the defendant."
Record at 18. This finding does not support the above-quoted aggravating circumstance. That circumstance applies only in the case where the defendant commits a capital felony to resist an actual, lawful arrest by an authorized individual.
The trial judge found no mitigating circumstances in this case, although the petitioner argued as a mitigating circumstance that a third participant in the robbery-murder would not receive the death penalty. The list of mitigating circumstances in section 13-11-7, Code of Alabama 1975, is exclusive, and the grounds argued by the petitioner do not fit within any of the seven enumerated factors in that section. The judge did not err by not weighing the petitioner's "mitigating circumstance" described above.
The Supreme Court has held that "it is essential that the capital sentencing decision allow for consideration of whatever mitigating circumstances may be relevant *649 to either the particular offender or the particular offense." Roberts v. Louisiana, 431 U.S. 633, 637, 97 S.Ct. 1993, 1996, 52 L.Ed.2d 637 (1977); accord, Jurek v. Texas, supra, 428 U.S. at 271, 96 S.Ct. 2950. This command is not satisfied by statutory language alone. The trial judge must require a meaningful examination of possible mitigating factors in capital cases.[*]
JONES, Justice (Dissenting):
I respectfully dissent.

I.
I concur in the dissenting opinion of Justice Shores. That the statutory scheme of our death penalty Act hampers, and thus impugns, the fact-finding process, presenting the jury with a "Hobson's choice," is dramatized by the voir dire in the instant case:
"A. [Prospective juror Jack R. Chandler] What you're saying is there's no in-between?
"Q. No in-between.
"A. Even though he was found guilty of a lesser crime?
"Q. Yes, sir.
"A. He still would get the death penalty, even though it was a lesser crime?
"Q. Either that, or you turn him loose completely.
"A. Well, why don't you have an in-between? Why is it either `do' or `don't'?
"Q. I can't answer that question; but would you hesitate to find the defendant not guilty?
"A. Yeah, I'd hesitate to find him not guilty."
(The trial Judge sustained the challenge for cause of this prospective juror.) An earlier examination proceeded thusly:
"Q. If the evidence is not strong enough to justify your finding the defendant guilty and fixing the death penaltyyet guilty of a crime of some kinddo you think that you could acquit the defendant under those conditions?
"A. [Prospective juror Earl D. Allison] Not if he was guilty of some crime. No sir."
Furthermore, the trial Judge, at the post-trial sentence hearing acknowledged the jurors' frustration in this regard:
"The jurors do not like this law. That seemed to be the comment we got when each juror was questioned on voir dire. . .."
Obviously, then, the jurors fully appreciated the mandatory nature of the statute. The attendant possibility of either sentencing to death one whom the jury believes committed the offense charged but under circumstances not requiring the death penalty, or releasing one who has committed either the offense charged or some lessor included offense, I believe, renders the conviction arbitrary, capricious and discriminatory, and thus unconstitutional. See Woodson, supra, 428 U.S. at 289-298, 96 S.Ct. 2978 (Stewart, J.).

II.
Likewise, I would hold that due process of law is denied by the mandatory nature of the sentence ("Kill `em or let `em go free"), which precludes individualized consideration of the offense and the offender in the selective process of who shall die.
The State argues that the statute does not constitute the jury as the "sentencing authority," contending that its verdict fixing the punishment at death as merely "advisory"; and this because the trial Judge must conduct a separate, post-trial sentence hearing. This argument is not persuasive for two reasons. First, the Act specifically requires the jury, upon the finding of guilty, to "fix the punishment at death." *650 Act 213, § 2, 1975 Ala.Acts.[1] Furthermore, § 4[2] provides inter alia:
Notwithstanding the fixing of the punishment at death by the jury, the court after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole . . .. (Emphasis added.)
Thus, while the trial judge may "refuse to accept" the sentence previously fixed and reduce it to life imprisonment without parole, the jury initially fixes the sentence at death. This subsequent consideration of mitigating factors cannot rectify the unconstitutionally unreliable sentence already imposed.
Second, regardless of who is the actual sentencing authority, the statute mandates that the jury consider itself the "sentencer." The jury is charged that, upon a finding of guilty, it must fix the sentence at death. As in this case, where a guilty verdict is returned, it is accompanied, mandatorily, by the death sentence. The jury is not told, nor does it believe, that the sentence it renders is merely advisory. Consequently, the statute, by its mandatory language, requires, at the very least, that the jury think of itself as the sentencing authority. Therefore, without the opportunity to consider mitigating circumstances, the jury's sentence must be considered invalid.

III.
The majority would hold that the subsequent hearing by the trial Judge cleanses the guilt determination by weighing aggravating and mitigating circumstances and, possibly, reducing the sentence ostensibly suggested by the jury. This, however, begs the question because the jury has already found the defendant guilty and sentenced him to death. When a defendant's life is at stake, we must be particularly sensitive to ensure that every safeguard is observed. Gregg, supra. Therefore, if a higher degree of due process is to be attendant in "death cases" (see Furman, supra (Douglas, J.)), surely this must also attend the fact-finding process as well. Furthermore, the trial judge's consideration of mitigating and extenuating circumstances does not include the same elements and factors as does consideration of lesser included offenses. Here, the merger of guilt and punishment deliberation, when taken together with the absence of available alternative findings, forecloses dependable fact-finding bases.
". . . [W]hen one considers the long and consistent American experience with the death penalty in first-degree murder cases, it becomes evident that mandatory statutes enacted in response to Furman have simply papered over the problem of unguided and unchecked jury discretion." Woodson, supra, at 302, 96 S.Ct. at 2990.
It is imperative that the standard of guilt not be so diluted.
The majority's judicial review "cure-all" obtains even less credence when it is understood that such guided discretion is placed upon a popularly-elected official. It must be admitted that there is no constitutional mandate of jury sentencing. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). As pointed out in Proffitt, however, an important societal function is performed by jury sentencing in that only in this manner can contemporary community standards be reflected. Proffitt, at 252, 96 S.Ct. 2960. See also Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
Moreover, to leave sentence reduction in the prerogative of the trial court is to place undue pressures upon this office. Again, admittedly, a trial judge must often be the bulwark of the legal system when presented with unpopular causes and adverse public opinion. This State's recent history, however, reflects the outcry of unjustified criticism attendant with a trial judge's reduction of a sentence to life imprisonment without possibility of parole, after a jury has returned a sentence of death.[3] Clearly, *651 this pressure constitutes an undue compulsion on the trial judge to conform the sentence which he imposes with that previously returned by the jury. As such, I would hold that, due to practical considerations, such system created by the statute cannot comport to constitutional standards.

IV.
Given the vacuum in which the lawmakers of our nation were compelled to function in the wake of Furman, I think it phenomenal and thus to its credit, that our State Legislature, in its enactment of Act 213, so nearly approximated the subsequently prescribed Gregg guidelines. Indeed, the overall intent and purpose of the Act, which is clear and unambivalent (to authorize the death penalty for certain narrow categories of aggravated homicide and to prescribe a sentencing procedure), is now recognized as the law of the land. The Act's failure to provide a bifurcated proceeding in which the jury is charged with the responsibility, first, to try the issue of the defendant's guilt, and, second (in the event of a guilty verdict), to determine at a separate hearing, based upon aggravating and mitigating circumstances, whether the defendant should be sentenced to prison for life without parole, however, renders it unconstitutional.
Any supplementing of the statute to provide bifurcated jury proceedings is not to engage in judicial legislation, but merely to conform the legislative intent, as expressed in the statute, to constitutional standards. Pruett v. Patton, 288 Ala. 710, 265 So.2d 130 (1972). See also Pierce v. State, 292 Ala. 473, 296 So.2d 218 (1974); and Jackson v. State, 337 So.2d 1242 (Miss.1976). This supplementation, according to my view, has been stated in my dissent in Harris, supra, at 494-6. Though there dealing only with the sentencing aspect, I believe a new trial, as I would here require, under the procedure there stated would be appropriate.
SHORES, Justice (Dissenting):
I agree that it is no longer debatable that a death penalty may be provided by legislation if the legislation meets constitutional requirements as set out in the several recent decisions pronounced by the Supreme Court of the United States. I cannot agree, however, that the Alabama statute meets those standards.
In effect, our statute requires the jury (1) to find the defendant guilty or not guilty of the offense charged; (2) it may not find him guilty of any lesser offense; and (3) if it finds him guilty, it must fix his punishment at death. It seems to me that this necessarily influences the jury's determination of guilt or innocence by introducing into that deliberation considerations which have no place in the determination of whether a defendant is guilty or innocent of the offense charged. See, generally, Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1978); and Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). A jury's reluctance to set free one which it believes guilty of some offense must inevitably have a bearing on its verdict. The majority finds comfort in historical data which supports the conclusion that juries do consider the grave consequences of a conviction in reaching a verdict under mandatory death statutes. The Supreme Court of the United States did remark in Furman, infra, and again in Woodson, supra, that this nation abhorred the mandatory death sentence. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Woodson v. North Carolina, 428 U.S. at 296, 96 S.Ct. 2978. I suggest that, although there is no historical data to support it, most, if not all, jurors at this point in our history perhaps equally abhor setting free a defendant where the evidence establishes his guilt of a *652 serious crime. We have no way of knowing what influence either of these factors have on a jury's deliberation, and which of these unappealing alternatives a jury opts for in a particular case is a matter of purest conjecture. We cannot know that one outweighs the other. Jurors are not expected to come into the jury box and leave behind all that their human experience has taught them. The increasing crime rate in this country is a source of concern to all Americans. To expect a jury to ignore this reality and to find a defendant innocent and thereby set him free when the evidence establishes beyond doubt that he is guilty of some violent crime requires of our juries clinical detachment from the reality of human experience; and, in my judgment, renders the statute under which this defendant was convicted unconstitutional.
It is no answer to say that the defendant has been given all that the Constitution guarantees to him because the trial judge may, after a hearing, reduce the death sentence mandatorily imposed by the statute to life without parole. This, too, ignores the reality of the situation. Stripped to its bare essentials, the statutory scheme requires for any modification of the mandated death sentence that the trial judge substitute his judgment for that of the jury on the sentence to be imposed in the enumerated capital cases. The trial judge in this case, as pointed out in the Chief Justice's separate opinion, in fact so viewed his role at the sentencing hearing. True, at that stage the trial judge may hear evidence in mitigation of the death sentence, but only after a jury has been charged that its only alternative is to find the defendant guilty of the offense charged and impose the death penalty, or set him free. I cannot agree that this is the kind of judicial review which the Supreme Court of the United States contemplated in upholding the statutes of some of our sister states.
The statutory scheme set up by our statute fails to "make rationally reviewable the process for imposing the death penalty." Woodson v. North Carolina, supra, at 303, 96 S.Ct. at 2991.

ON REHEARING
We deny petitioner's application to rehear his case but we point out that we have examined the cases of Bell v. Ohio, ___ U.S. ___, 98 S.Ct. 2977, 57 L.Ed.2d 1010 and Lockett v. Ohio, ___ U.S. ___, 98 S.Ct. 2954, 57 L.Ed.2d 973, decided after petitioner's application for rehearing was filed, and we conclude that those cases do not invalidate Alabama's sentencing scheme in death cases. Alabama's sentencing scheme specifically provides, in part:
". . . In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13-11-6 and 13-11-7. . . ." [Emphasis added.] [§ 13-11-3, Code, 1975].
Section 13-11-7, Code, 1975, provides:
"Mitigating circumstances shall be the following:
(1) The defendant has no significant history of prior criminal activity;
(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;
(3) The victim was a participant in the defendant's conduct or consented to the act;
(4) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor;
(5) The defendant acted under extreme duress or under the substantial domination of another person;
(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and
(7) The age of the defendant at the time of the crime. (Acts 1975, No. 213, § 7.)"
It is readily apparent, therefore, that Alabama's sentencing scheme broadly *653 allows the accused to present evidence of mitigating circumstances, and does not contain the deficiencies the court found were inherent in Ohio's scheme.
Furthermore, we have examined the original record again to determine what opportunity was given to the petitioner to present mitigating circumstances. After the jury returned its verdict, the trial court addressed the petitioner and his counsel:
"THE COURT: Mr. Jacobs, you have heard the verdict of the jury finding you guilty as charged in the indictment and fixing your punishment at death.
"Is there anything you wish to say at this time?
"THE DEFENDANT: I didn't shoot the man, is all I can say. At least, I didn't kill him, anyway."
The court then discussed the setting of the post-conviction hearing, mandated by § 13-11-3, Code, 1975:
THE COURT: Well, I'll tentatively set it [post-conviction hearing] for Thursday, October the 14th.
"Now, Mr. Jacobs, do you have anything else to say before the jury is discharged?
"THE DEFENDANT: (Shakes head negatively.)
"THE COURT: Do you know of any reason why the jury should not be dismissed?
"MR. NESMITH: No, sir.
"MR. WALKER: No, sir.
"THE COURT: All right, then."
At the post-conviction hearing, the court explained the scope of the inquiry:
". . . Of course, either side can present any arguments or any other evidence of an evidentiary natureexhibits or anythingthat might be of value to the Court in determining whether or not the defendant will be sentenced to death, or to life imprisonment without parole."
Except to request a continuance of the hearing until an alleged co-defendant could be tried,[1] the petitioner offered essentially nothing in mitigation except to claim that his role in the offense was minor.
On two different occasions during the post-conviction hearing, the trial judge asked both of petitioner's attorneys if they had anything further to present and they replied in the negative. Then, before sentencing petitioner, the court conducted the following colloquy with the petitioner:
"THE COURT: Mr. Jacobs, do you have anything to say at this time? Do you have anything to say at all?
"THE DEFENDANT: All I can say is that my . . . the bullet that I shot did not kill that man. Otherwise, I cannot say anything to change the Court's mind on whatever they already decided.
"THE COURT: Anything else to say, Mr. NeSmith or Mr. Walker?
"MR. WALKER: No, sir, Judge.
"MR. NESMITH: No, sir.
"THE COURT: Well, then.
Jerry Wayne Jacobs, as you have heard, the jury returned a verdict while you were present in the Courtroom finding you guilty, as has already been stated, of intentionally killing this Mr. Walter Robert Knight during the course of a robbery.
"You have already been adjudged guilty; so, after this hearing, it is now my duty to pronounce the sentence."
It is abundantly clear that Alabama's sentencing process permits "consideration of the `character and record of the *654 individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death,' . . ." Lockett v. Ohio, ___ U.S. ___, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Here, the trial judge, both before discharge of the jury, and at the statutorily mandated post-conviction hearing, specifically asked the petitioner and his counsel if they had anything further to show in mitigation. What the petitioner offered in mitigation has been set out substantially in this extended opinion.
In his original dissent, Mr. Justice Jones stated: "The majority's judicial review `cure all' obtains even less credence when it is understood that such guided discretion is placed upon a popularly-elected official." He supports his conclusion dehors the record by citing an example in footnote 3 of his dissent, and states that public comment or clamor will influence trial judges to ignore mitigating circumstances. We hesitate to go outside the record to answer Mr. Justice Jones' conclusion, but we feel constrained to do so, since he infers that elected judges will not do their sworn duty, and will be unduly swayed by public pressure. Since Mr. Justice Jones made his observation, we have been informed that the same trial judge who conducted the trial in the case mentioned by Justice Jones has again sentenced a defendant to life without parole. State v. Eddie Bernard Neal, # 78-00639, decided August 7, 1978, 10th Judicial Circuit. We are also informed that a jury in Covington County acquitted a defendant charged under the capital felony statute. State v. David Bonner, # CC 7825, decided April 19, 1978, 22nd Judicial Circuit. Consequently, any suggestion that either judges or jurors will fail to do their sworn duty because of public comment or clamor should not be entertained.
Furthermore, Alabama has an automatic appeal statute, which the Supreme Court of the United States has described as "an enlightened procedure," [Coleman v. Alabama, 377 U.S. 129, at page 132, 84 S.Ct. 1152, 12 L.Ed.2d 190 (1964)], and this procedure has been utilized on many occasions to reverse cases when this Court found prejudicial error from a review of the record. Therefore, any suggestion that this Court, or the Court of Criminal Appeals will uphold the imposition of death sentences because of "pressure" should be rejected.
OPINION EXTENDED; APPLICATION FOR REHEARING DENIED.
BLOODWORTH, MADDOX, FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
JONES and SHORES, JJ., dissent.
NOTES
[1] §§ 13-11-1, et seq., Ala.Code 1975.
[2] § 13-11-2, Ala.Code 1975.
[3] § 13-11-3, Ala.Code 1975.
[4] It is interesting to note that in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the appellant argued that giving the jury discretion would allow juries to decide which defendants should and should not die. Gregg claimed, unsuccessfully, that this vesting of discretion in the jury was unconstitutional.
[5] Code of Ala., 1975, § 13-11-3.
[*] This requirement of a meaningful examination of mitigating factors was met in another death penalty case decided today, Evans v. State, 361 So.2d 666, No. 77-180 (Ala. May 19, 1978).
[1] § 13-11-2, Ala.Code 1975.
[2] § 13-11-4, Ala.Code 1975.
[3] Without speaking to the merits of the case, or the propriety of the trial Judge's action in the particular setting, I call attention to the case of State v. Nolen, Circuit Court No. 7702059 (February 17, 1978), in which the trial Judge was made the object of voluminous public ridicule, including a resolution of condemnation by the State Legislature, numerous newspaper editorials and cartoons, Letters to the Editor, speeches, etc. To be sure, none of this criticism, to my knowledge, was based upon the merits of the statutory function of the judiciary; rather it was directed toward the "unwarranted" tampering by a trial Judge with a jury verdict.
[1] The following transpired:

"The arguments so far have been addressed more or less to the application of the law. Do you have anything else in the way of evidence?
"MR. NESMITH: Your Honor, could I . . . would the Court entertain a motion that this hearing be adjourned until the trial of the State versus Eugene Brown is completed in order that the transcript of that proceedings might be introduced in the record of this case?
"THE COURT: What benefit would that be?
"MR. NESMITH: Well, actually, what it would do is show the discretion . . . the evidence produced in the Brown case here. Just what we've been arguing today. There's no immediate hurry
"THE COURT: I would have to overrule your motion."