375 So.2d 828 (1979)
In re Clyde CADE
v.
STATE of Alabama.
Ex parte Clyde Cade.
78-288.
Supreme Court of Alabama.
May 25, 1979.
Joseph P. Hughes, Geneva, for petitioner.
Charles A. Graddick, Atty. Gen., and Linda C. Breland, Asst. Atty. Gen. for the State, respondent.
PER CURIAM.
We have carefully reviewed the opinion of the Court of Criminal Appeals and the record of the proceedings in this cause, and are convinced that the judgment of the Court of Criminal Appeals is due to be, and is affirmed.
AFFIRMED.
*829 TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting):
I concur in the affirmance of the judgment of conviction. I respectfully dissent and would reverse and remand the judgment of sentence. My views on the constitutionality of our Death Penalty Statute are expressed in my dissenting opinion in Jacobs v. State, 361 So.2d 640 (Ala.1978).
My chief concern lies in the mandate of the Statute that, upon finding the defendant guilty, the jury "shall fix the punishment at death." This mandatory requirement, it seems to me, imposes an undue, almost overwhelming, pressure upon the trial judge as he exercises the awesome responsibility of weighing the aggravating and mitigating circumstances in deciding the ultimate life/death fate of the accused. The bifurcated sentencing hearing, as mandated by Gregg[1], can accomplish its intended purpose only if the final sentencing authority is totally free to evaluate, one against the other, all the aggravating and mitigating circumstances surrounding the offense and the offender; and this freedom should be unencumbered by any prior determination, in an unbifurcated context, of the ultimate sentencing issue.
I am not here concerned with the question of who, under the statutory scheme of our Death Penalty Act, is the sentencing authoritythe jury or the judge. My concern transcends this academic aspect of the problem and centers on the more basic question: Within the cultural and political realities of the real live world, can the trial judge make a truly independent judgment on the life/death issue in the bifurcated sentencing hearing in face of a jury verdict of "... guilty ... and we fix his punishment at death in the electric chair"? Otherwise stated, can the sentencing judge genuinely accept the sentencing portion of the jury verdict as surplusage and, uninfluenced thereby, render judgment of sentence on the evidence adduced at the trial proper and the subsequent bifurcated sentencing hearing. I do not mean by this, of course, that he should not consider the aggravated nature of the offense as complying with the statutory definition of a capital crime for which the death penalty is permissible. Rather, my concern is that the Statute inherently imposes the undue influence of the death penalty portion of the jury verdict upon the trial judge's ultimate judgment of sentence. It was my point, at the time of writing the Jacobs dissent, that it is impractical and unreasonable to expect even the most honest and courageous trial judge to execute the duties of his office in a vacuum.
It must be said, however, after a rather stormy beginning,[2] experience thus far has proved my fears at least partially wrong. Of the 65 death penalty convictions to date, 22 defendants have been sentenced to life without parole. This does not end the debate, of course. It may be pointed out that 13 of these 22 were sentenced to life without parole on a negotiated plea of guilty with no jury verdict of death. (The propriety of this procedure is currently pending before this Court.) The remaining 9 have drawn considerable publicity, and it is no secret that any judge, despite the merits of the individual case, risks public condemnation, as well as his political future, each time he "tampers" with a jury verdict of death.[3]
All of this is to say that I had understood (or, perhaps, I had presumed) that the majority in Jacobs was saying that our Death Penalty Statute, imposing upon the trial judgeas the ultimate sentencing authority *830 the discretion to reduce the sentence if reduction is warranted by the evidence, comports with the constitutional guidelines of Gregg; and this in spite of a jury verdict that fixes the defendant's punishment at death. I thought the holding of Jacobs necessarily implied that the jury's sentence of death would not inherently encumber the trial judge's exercise of his discretion in the sentencing process.
Here, again, let me emphasize that I am not saying (and on this point there is no disagreement between the majority and the dissent in Jacobs) that the trial judge does not, or should not, consider the verdict of guilty (otherwise the bifurcated sentencing hearing would not be taking place) or the total circumstances (both aggravating and mitigating) adduced in both proceedings surrounding the accused and the crime. What I am saying is this: I thought our point of difference in Jacobs centered on what I termed as the inherent constitutional deficiency of the Statute that structured a system whereby the defendant comes before the trial judge for sentencing, having already been sentenced to die by a jury who had no discretion to do otherwise upon its finding of guilty.[4] The majority, finding no such deficiency, had to be saying that the trial judge, notwithstanding this death verdict by the jury, can objectively weigh all the aggravating and mitigating circumstances and exercise his judicial discretion in fixing the sentence either at death or at life without parole.
With this premise established, I turn now to what I perceive as error in the instant case. The trial Court's sentencing order reads in pertinent part:
"... evidence and argument having been presented to the Court relevant to the sentencing of Clyde Cade, including matters relating to the aggravating and mitigating circumstances enumerated in Title 13-11-6 and Title 13-11-7 of the Code of Alabama, 1975,
"And the Court having considered all of the evidence presented at the trial of this cause which was started on March 13, 1978 and completed on March 15, 1978,
"The Court finds from the evidence that Clyde Cade was guilty and is guilty of killing L. D. Sizemore, the Sheriff of Geneva County, Alabama because of an official or job related act, the arrest of the defendant, by shooting him with a pistol;
"The Court further finds that the defendant, Clyde Cade, shot L. D. Sizemore, the Sheriff of Geneva County with a pistol; that as a result of the shooting, L. D. Sizemore died; that the killing was willful, deliberate, malicious, and premeditated; that these four elements co-existed before and at the time Clyde Cade killed L. D. Sizemore; that the offense constituted first degree murder of L. D. Sizemore;
"The Court further finds that at the time of the murder, L. D. Sizemore was the Sheriff of Geneva County, Alabama; that he was performing an official or job related act of arresting Clyde Cade as a result of Clyde Cade committing an offense in L. D. Sizemore's presence or as a result of his threatening to breach the peace in his presence;
"The Court further finds that this Capital felony of first degree murder was committed for the purpose of avoiding or preventing a lawful arrest, and
"The Court further finds that this Capital felony was committed to disrupt or hinder the lawful exercise of a government function or the enforcement of the law. The evidence showed that L. D. Sizemore was the Sheriff of Geneva County, Alabama; that Clyde Cade was creating a disturbance in the Key Community; that a complaint had been made to the Geneva County Sheriff's office *831 concerning the disturbance being created by Clyde Cade in the Key Community; that shortly after the complaint was made, L. D. Sizemore arrived at the scene of the disturbance in the Key Community in Geneva County, Alabama; that Clyde Cade was disorderly, threatening and boisterous in the presence of the Sheriff; that Clyde Cade assaulted the Sheriff and shot him five times while he was unarmed and sitting in his patrol car; that at the time, L. D. Sizemore, the Sheriff of Geneva County, Alabama, was functioning as he is required to do under the laws of the State of Alabama: that is, investigating complaints, making an arrest for breaches of the peace, threatened in his presence or offenses committed in his presence and protecting other citizens from the disorderly, threatening and boisterous conduct of the defendant and from the defendant's conduct in so disturbing the peace on the property of the Keys without the owner, occupants, or others who have the authority, consenting to the said conduct on their property; that the Sheriff was enforcing the law by arresting Clyde Cade, who was unlawfully preventing the Keys from being able to peacefully enjoy and use their home through his threatening, disorderly and boisterous conduct on the property of the Keys or property for which they had immediate right to possession of to the exclusion of Clyde Cade; that L. D. Sizemore was doing at the time that which he was elected to do by the citizens of Geneva County and that is protecting the life and property of law abiding citizens from unlawful intrusions on their person and property by anyone conducting themselves as Clyde Cade was on this occasion,
"The Court further has considered all of the testimony concerning the diminished responsibility of the defendant, his state of mind at the time of the killing, his degree of intoxication, his mental competency, the circumstances surrounding the killing and whether or not it was done in the heat of passion, and the Court finds that the defendant did not act under extreme duress and that he had the capacity to appreciate the criminality of his conduct and his ability to conform his conduct to the requirements of law was not substantially impaired.
"The Court, after considering all the evidence in the case and the circumstances of the offense, together with the character and propensity of the defendant, Clyde Cade, and after weighing the aggravating and mitigating circumstances and the punishment of death by the jury, finds the defendant, Clyde Cade, should be sentenced to death." (Emphasis added.)
Here, the trial Judge forthrightly and candidly admits that one of the aggravating circumstances considered by him in his judgment of the death sentence was, "... and the punishment of death by the jury ...." The apprehension voiced in my dissent in Jacobs, which I felt was an inherent and necessary incident in every case, is set out here in clear, unmistakable language. This sentencing order is susceptible of only one meaning: The Judge is saying that among those circumstances considered by him in exercising his discretion in favor of the sentence of death is the fact that a jury of twelve persons, in returning a guilty verdict, has already fixed the Defendant's punishment at death. True, we do not know how much weight he gave the jury's death sentence; but, surely, we cannot speculate that, had he given it no consideration, he would have reached the same conclusion. Indeed, it is just as reasonable to assume that his consideration of the jury's death sentence tipped the scales in favor of his judgment fixing the punishment at death.
The majority of this Court in Jacobs said in effect that it would not assume, absent evidence to the contrary (as I admit I wrongfully did), that the trial judges of this State would not honestly and courageously discharge the duties of their office in objectively weighing the aggravating and mitigating circumstances of each individual case uninfluenced by the mandatory jury sentence of death.
*832 The reason the jury's verdict as to the sentence cannot constitute any part of the trial judge's consideration should be obvious. The jury's function is to determine the defendant's guilt or innocence of the capital murder charged in the indictment. For the verdict to go beyond this and fix the sentence at death as mandated by the Statute without the exercise of guided discretion brings the case squarely within the prohibition of Woodson.[5]
If the jury cannot act, under these circumstances, as the ultimate sentencing authority (which it clearly cannot), then, surely, its sentence of death cannot serve as a consideration in guiding the trial court's search for, and application of, a nondiscriminatory test for determining who shall die and who shall live. Under our statutory scheme, the jury's sentence of death means only that the jury has returned a verdict of guilty. It would be ludicrous to suppose that under our Statute the jury will find guilty only those it feels should be put to death and discharge as not guilty all others charged under our Statute. To make such an assumption is, of itself, an acknowledgement of our Statute's unconstitutionality under the test of Gregg and Woodson.
The trial proper, in its unbifurcated context, has furnished the jury neither adequate data of aggravation and mitigation nor legal guidelines for the exercise of its guided discretionthe very deficiency contained in Woodson. Moreover, the jury's discretion under our Statute is not to convict the defendant of the offense and then decide in a bifurcated sentencing hearing if he lives or dies; rather, its only choice (other than to disagree and mistry the case) is to discharge the defendant as not guilty or to convict him and sentence him to death. Therefore, to allow the trial judge to consider the jury's verdict of death as an aggravating circumstance in arriving at his ultimate judgment of the death penalty is to commit the same erroror, more accurately, to commit the same error compounded.
NOTES
[1] Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
[2] See footnote 3 in my dissenting opinion in Jacobs v. State, 361 So.2d at p. 350.
[3] I have placed the word "tampers" in quotation marks to signify that it is not my choice of word, but it is the word used or inferred by the critics of judges who reduce the death sentence fixed by the jury to life without parole.
[4] It is interesting to note that the jury's sentencing role under the Florida Death Penalty Statute, though a recommendation merely, comes after a full, bifurcated sentencing hearing. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) and Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). By contrast, our Statute mandates the death penalty by the jury upon its finding of guilty absent any sentencing hearing whatsoever.
[5] Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).