**John Louis EVANS, III, Petitioner,**

v.

**Robert G. BIRTTON, Commissioner, Alabama Board of Corrections, and Joseph Oliver, Warden, Holman Prison, Respondents.**

Civ. A. No. 79–0200–H.

United States District Court,
S. D. Alabama, S. D.

June 11, 1979.

---

**9.** 427 U.S. 50, at p. 73, 96 S.Ct. 2440.

**10.** *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Dennie N. Balske, Stephen J. Ellman, Morris S. Dees, Jr., John L. Carroll, Montgomery, Ala., for petitioner.

Edward E. Carnes, Jack M. Curtis, Asst. Attys. Gen., Montgomery, Ala., for respondents.

## MEMORANDUM OPINION

HAND, District Judge.

The petitioner, presently incarcerated on death row at Holman Prison Unit under a death sentence imposed by the Circuit Court of Mobile County, brings this action seeking habeas corpus relief from such sentence pursuant to Title 28 U.S.C.A., § 2254. The facts leading up to the conviction of the petitioner have been set out by the Alabama Court of Criminal Appeals in *Evans v. State*, 361 So.2d 654, 655–62 (Ala.Cr. App.1977), and need not be repeated here. The petitioner was convicted of capital murder by a jury in the Mobile County Circuit Court on April 26, 1977 and, following a presentence hearing on April 27, 1977, the trial judge accepted the death penalty sentence returned by the jury. In October of 1977 the conviction and sentence were affirmed by the Alabama Court of Criminal Appeals, *id.*, and these decisions were affirmed by the Supreme Court of Alabama in May of 1978. *Id.* at 666. Evans filed a petition for a writ of certiorari in the United States Supreme Court on November 16, 1978, but the petition was denied on February 21, 1979. *Evans v. Alabama*, —— U.S. ——, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979) (Marshall & Brennan, JJ., dissenting). On March 1, 1979, the Alabama Supreme Court entered an order requiring that Evans be executed in accordance with the sentence on April 6, 1979. On April 5, 1979 the United States Supreme Court, through Justice Rehnquist, stayed the scheduled execution in response to a next-friend application for habeas corpus filed by petitioner's moth-

**710**

er. *Evans v. Bennett,* —— U.S. ——, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979) (Rehnquist, J.). This stay was later dissolved by a unanimous vote of eight members of the Court. *Evans v. Bennett,* —— U.S. ——, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979). The Alabama Supreme Court set a new execution date of April 27, 1979, which was stayed by this Court on April 20th pending the final adjudication on the merits of the habeas corpus petition presently before the Court.

The petitioner sets out two general grounds for habeas relief: the trial judge erred in failing or refusing to instruct the jury in his case on the elements constituting a prima facie case of robbery; and the Alabama death penalty statute under which the petitioner was convicted and sentenced is unconstitutional. The Court is convinced that jurisdiction properly lies in this Court to consider these issues pursuant to Title 28 U.S.C.A. § 2254.

### I.

The petitioner contends that the trial judge's failure to instruct the jury on the elements of robbery violated his right to due process of law. There is no question but that the jury was not so instructed, the oral charge of the trial judge reading in pertinent part as follows:

> The charge against the defendants is that they did unlawfully, intentionally, and with malice aforethought, kill Edward Nassar during the course of a robbery. The law of Alabama provides that anyone who, during the course of a robbery, intentionally kills the victim, is guilty of this offense, and the punishment for this offense is death by electrocution. . . Now, the State must prove that [the defendants] intentionally killed Mr. Nassar. Unless there is an actual or positive intent to kill, they are not guilty of the crime with which they are charged. The intentional killing is a willful killing, an act governed by the will of the individual committing the same. The indictment further charges that they committed the act with malice. Malice means hatred or hostility toward another. It doesn't nec-

essarily mean a personal ill will. When associated with murder, or a killing of this kind, it means an unlawful act, willfully done, without just cause or legal excuse. It is that mental state or condition which prompts one to do an unlawful act without legal justification. It has also been defined as that condition of mind which shows a heart, regardless of social duty, totally bent on mischief.
> 
> . . .
> 
> (Transcript, pp. 223–24). Evans and his

co-defendant, Wayne Ritter, had three attorneys representing them during this trial. None of these attorneys raised any objection to the oral charge given the jury by the trial court.

Evans' indictment charged that he violated section 13–11–2(a)(2) of the Alabama Code of 1975, which provides, in pertinent part, that:

> (a) If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment, and *which offenses so charged with said aggravation shall not include any lesser offenses:*
>
> \*     \*     \*
>
> (2) Robbery or attempts thereof when the victim is intentionally killed by the defendant. . . .

The petitioner contends that the trial judge's failure to instruct the jury on the elements of robbery before they considered his guilt or innocence on the charges constituted a violation of his due process rights, arguing that in order to find the petitioner guilty, it was incumbent upon the jury to find beyond all reasonable doubt that a robbery and an unlawful killing had taken place. And, of course, the due process clause protects criminal defendants from conviction in a case where there has not been "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970).

■ In most cases it might be proper for an Alabama appellate court to reverse and remand a conviction under the statute for failure to give such an instruction, since there is no question but that no defendant should be convicted by a jury that has not been fully charged on all elements making up the crime charged. The instant case is rather unique, however, in that the petitioner had pled guilty, voluntarily and with full knowledge of his *Boykin* rights, on four separate occasions, at least once before the jury, in that counsel for the petitioner raised no objection to the court's failure to so instruct, and in that this case is in this Court by means of collateral attack rather than direct appeal. This Court is of the opinion that the trial judge erred in failing to instruct the jury on the elements of robbery, but that such error was harmless or in any event did not result in any fundamental unfairness. *See Bradley v. Wainwright*, 561 F.2d 1200 (5th Cir. 1977). It cannot be said under the evidence presently before the Court that a properly charged jury might have reached a different verdict, *e. g., Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), so it is quite clear that no constitutional error justifying habeas corpus relief is present.[1]

■ Even if the Court were persuaded that the trial court's failure to instruct the jury on the elements of robbery amounted to a violation of the petitioner's due process rights, habeas relief would be foreclosed by the petitioner's admitted failure to raise a contemporaneous objection at trial to the omitted instruction. Clearly petitioner and his admittedly competent counsel were given the opportunity to object to the purportedly erroneous omission. Under Alabama law as it stood at the time of this trial, no defect in an oral charge was to be reviewed on appeal unless a timely objection had been made. *E.g., Jacobs v. State*, 361 So.2d 607 (Ala.Cr.App.1977). While the rule has recently been relaxed by an amendment to Rule 39(k) of the Alabama Rules of Appellate Procedure that permits the Supreme Court to note any plain error in the proceedings, the prior rule is applicable to this case. Of course, the fact that direct appeal is barred does not preclude this Court from considering the issues on a habeas corpus petition, but it is incumbent upon a party that has violated a state contemporaneous objection rule to make a showing of cause for or prejudice from the procedural default before the procedural default may be waived in federal court. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 608 (1977); *Spinkellink v. Wainwright*, 578 F.2d 582, 591–92 (5th Cir. 1978). In the instant case the only cause for the procedural default is the conclusion of the petitioner's trial counsel that no instruction was necessary, and there is simply no evidence that counsel was incompetent or inadequate. In addition, there is no prejudice at all flowing from the procedural default since there is little if any likelihood that any other verdict would have been reached by the jury. Accordingly, the Court is of the opinion that habeas relief is not available to the petitioner herein for the trial court's failure to instruct the jury on the elements of robbery.[2]

---

1. The petitioner is totally without proof that he suffered any prejudice from the failure to instruct the jury on the elements of robbery. At every stage of the proceedings in the case he admitted that he had robbed and murdered Edward A. Nassar. He first confessed to the F.B.I. in Little Rock, Arkansas; next to the Mobile County Grand Jury that returned the indictment against him; then he admitted the robbery-murder at arraignment; and his final confession was before the jury during his trial.

2. The Court is aware of no less than two other grounds upon which habeas relief for the failure to instruct the jury on robbery is due to be denied. First, alluded to in the text, *supra*, is the fact that the trial judge's error can at worst be characterized as harmless, since the inclusion of such an instruction would not, under the circumstances, have resulted in any different result. Where an error in a state court proceeding is harmless beyond a reasonable doubt, federal habeas corpus relief is not available. *E.g., Milton v. Wainwright*, 407 U.S. 371, 377–78, 92 S.Ct. 2174, 33 L.Ed.2d 1, 6–7 (1972); *Washington v. Maggio*, 540 F.2d 1256, 1257 (5th Cir. 1976). Since the failure to instruct can only be characterized as harmless beyond a reasonable doubt, habeas corpus relief is due to be denied.

## II.

The second portion of the petitioner's habeas attack challenges the propriety of the Alabama Death Penalty Statute on various constitutional grounds. The petitioner raises seven specific constitutional objections to the Alabama statute, each of which is considered separately below by the Court.

Before considering the petitioner's various challenges, it is necessary to review the Alabama statutory scheme for the imposition of the death penalty. The Court notes at the outset that the Alabama statute was enacted in 1975, after the Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), but prior to the 1976 death penalty cases of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

The Alabama statute permits jury imposition of the death penalty for seven specified cases of felony murder,[3] for murder of any peace officer while on duty or because of some official or job-related act of such a peace officer while on duty,[4] for murder committed while the defendant is under a sentence of life imprisonment,[5] for first degree murder for remuneration or pursuant to a contract,[6] for murder resulting from the intentional killing of a person by willfully setting off or exploding dynamite dangerously near a vessel, railroad car, and inhabited or uninhabited dwelling, or certain buildings,[7] for multiple first degree murders,[8] for first degree murder of a public official stemming from or related to the official's position, acts, or capacity,[9] for any murder committed by any defendant who in the 20 years preceding the crime was convicted of murder in the first or second degree,[10] and for murder of any witness

---

A second, independent, additional reason for denying habeas corpus relief for the failure to instruct on the elements of robbery results from the fact that the conviction was predicated not only on a jury verdict, but also upon a voluntarily made informed guilty plea by the petitioner. Accordingly, the conviction attacked here is not just the result of the jury's deliberations, but additionally is the result of informed conduct on the part of the petitioner. The fact that the matter was subsequently tried to a jury resulted not from a rejection of the guilty plea by the trial court, but rather from Alabama practice of submitting all capital cases to a jury, regardless of what plea is entered. *See Prothro v. State,* 370 So.2d 740 (Ala.Cr.App.1979). Having pled guilty to the charges, the petitioner is thereby estopped to challenge the validity of the conviction on other than jurisdictional grounds. *See, e.g., Richardson v. Beto,* 472 F.2d 169 (5th Cir. 1973).

**3.** The specified crimes are "[k]idnapping for ransom or attempts thereof when the victim is intentionally killed by defendant," *Ala. Code,* § 13–11–2(a)(1), "[r]obbery or attempts thereof when the victim is intentionally killed by the defendant," *id.,* § 13–11–2(a)(2), "[r]ape when the victim is intentionally killed by the defendant," *id.,* § 13–11–2(a)(3), "carnal knowledge of a girl under 12 years of age, or abuse of such girl in an attempt to have carnal knowledge, when the victim is intentionally killed by the

defendant," *id.,* "[n]ighttime burglary of an occupied dwelling when any of the occupants is intentionally killed by the defendant," *id.,* § 13–11–2(a)(4), "[i]ndecent molestation of, or an attempt to indecently molest, a child under the age of 16 years, when the child victim is intentionally killed by the defendant," *id.,* § 13–11–2(a)(8), and "[m]urder in the first degree committed while the defendant is engaged or participating in the act of unlawfully assuming control of any aircraft by use of threats or force with intent to obtain any valuable consideration for the release of said aircraft or any passenger or crewman thereon, or to direct the route or movement of said aircraft, or otherwise exert control over said aircraft," *id.,* § 13–11–2(a)(12).

**4.** *Id.,* § 13–11–2(a)(5).

**5.** *Id.,* § 13–11–2(a)(6).

**6.** *Id.,* § 13–11–2(a)(7).

**7.** *Id.,* § 13–11–2(a)(9). The specified public buildings are set out in section 13–2–61.

**8.** *Id.,* § 13–11–2(a)(10).

**9.** *Id.,* § 13–11–2(a)(11).

**10.** *Id.,* § 13–11–2(a)(13).

subpoenaed to testify against the defendant.[11]

In death penalty cases, if the jury finds the defendant not guilty of capital murder it must return a verdict of acquittal and the defendant is to be discharged. If the jury is unable to agree on a verdict of guilty or not guilty, or if the jury is unable to agree on the imposition of the death penalty, then the trial court may enter a judgment of mistrial. After such a mistrial, the defendant may be once again tried for the aggravated offense or for a lesser, non-aggravated offense carrying a lighter sentence. *Ala. Code*, § 13–11–2(c).

In any case in which the jury finds the defendant guilty and imposes the death sentence, the trial court is required by section 13–11–3 to hold a pre-sentence hearing to determine whether to sentence the defendant to death or to life imprisonment without parole. These are the only options for the sentencing authority. At this hearing the court is to receive all evidence relevant to sentencing, particularly evidence reflecting upon the mitigating and aggravating circumstances set out in sections 13–11–6 and 13–11–7.[12] The Court is permitted to consider any evidence that it considers to have probative value, regardless of its admissibility under exclusionary rules, with the caveat that the defendant be given a fair opportunity to rebut any hearsay statements.

Following this hearing, the trial judge must weigh the aggravating and mitigating circumstances revealed by the evidence and either accept the sentence of death imposed by the jury, or reject the jury's sentence and impose upon the defendant the sentence of life imprisonment without parole. *Id.*, § 13–11–4. If the trial judge accepts the jury determination and imposes the death sentence, then the judge is required to set forth in writing findings of fact from the trial and the pre-sentence hearing that include, at the least, one or more of the statutory aggravating circumstances that has been found to exist and which is or are deemed sufficient to support a sentence of death, and any of the statutory mitigating circumstances found to be present which the trial judge determines to be insufficient to outweigh the death sentence. *Id.*, § 13–11–4(1) & (2).

Any capital murder conviction that results in imposition by the trial judge of the death penalty is automatically reviewed by the Alabama Court of Criminal Appeals and

---

**11.** *Id.*, § 13–11–2(a)(14).

**12.** Section 13–11–6 provides that:
Aggravating circumstances shall be the following:
(1) The capital felony was committed by a person under a sentence of imprisonment;
(2) The defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person;
(3) The defendant knowingly created a great risk of death to many persons;
(4) The capital felony was committed while the defendant was engaged in or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempt to commit, rape, robbery, burglary, or kidnapping for ransom;
(5) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
(6) The capital felony was committed for pecuniary gain;
(7) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws; or

(8) The capital felony was especially heinous, atrocious, or cruel.
Section 13–11–7 provides that:
Mitigating circumstances shall be the following:
(1) The defendant has no significant history of prior criminal activity;
(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;
(3) The victim was a participant in the defendant's conduct or consented to the act;
(4) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor;
(5) The defendant acted under extreme duress or under the substantial domination of another person;
(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and
(7) The age of the defendant at the time of the crime.

the Alabama Supreme Court. *Id.*, §§ 12–22–150, 12–22–240, 12–22–243, 13–11–5, and A.R.A.P. Rule 39(c).

### A. Preclusion of jury consideration of lesser included offenses

Under the Alabama statute, the trial jury in a capital case is specifically precluded from considering any lesser offenses that might be revealed by the evidence, *Ala. Code,* § 13–11–2(a), and the petitioner contends that such a preclusion is violative of both the Eighth and Fourteenth Amendments to the United States Constitution in that persons accused of capital crimes are denied due process of law, equal protection under the law, and are subjected to cruel and unusual punishment. As the petitioner notes at page 8 of his brief in support of the petition, Alabama is the only state that has adopted a post-*Furman* statute precluding consideration of lesser offenses in capital cases.[13]

On the due process contention, the petitioner argues that a jury that is precluded from considering lesser offenses is likely to resolve its doubts in favor of conviction where one or more of the elements of the offense charged is in doubt but the evidence clearly reveals that the defendant is guilty of some crime. In *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the United States Supreme Court was confronted with the issue of whether an Indian prosecuted under the Major Crimes Act, Title 18 U.S.C.A., §§ 1153 & 3242, was entitled to jury consideration of a lesser included offense when such lesser offense was not one of the crimes enumerated in the Act. A 6–3 majority of the court concluded that the defendant was entitled to such a lesser offense instruction, ruling that "it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." 412 U.S. at 208, 93 S.Ct. at

1995, 36 L.Ed.2d at 847, *citing* Fed.R.Crim. Proc. 31(c). This Court notes, however, that *Keeble* was a federal criminal prosecution, as were each of the earlier cases cited in the majority opinion as supporting the rule set out above. *See Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1895). The *Keeble* Court's opinion is therefore limited to instructions in federal criminal cases, for there is no language in the opinion that would, as the petitioner herein seeks to do, require states to follow the Federal Rules of Criminal Procedure. Nor can it be argued that the failure to instruct on lesser offenses violates the due process clause, for the *Keeble* Court acknowledges that such a failure has never been construed to violate the due process clause. 412 U.S. at 213, 93 S.Ct. 1993, 36 L.Ed.2d at 850. On this basis, this Court is of the opinion that *Keeble* does not stand as valid authority for the due process claims of the petitioner on the lesser offense issue.

Nor does the Court find it persuasive that capital juries might, as suggested in *Keeble*, find a defendant guilty and impose the death penalty on an improper predicate because they are convinced that the defendant is guilty of some lesser offense, although they have reasonable doubt as to the evidence on the capital offense. The argument assumes that jurors will abdicate their responsibility and violate their oaths in the interest of punishing criminal conduct, without consideration of any disparity between the perceived crime and the punishment to be imposed, and that trial judges will fail to properly weigh the sufficiency of the evidence submitted to the jury. The record in capital cases does not support such a conclusion of abdication of responsibility, for there have been two acquittals and three mistrials in cases arising under the

---

**13.** Since the 1972 *Furman* decision thirty-five states and the United States Government have redrafted death penalty legislation. *England, Capital Punishment in the Light of Constitu-* *tional Evolution: An Analysis of Distinctions Between Furman and Gregg*, 52 Notre Dame Lawyer 596, 601 (1977).

Alabama statute. First Stipulation between the Parties, no. 7. Indeed, there is a forceful argument favoring capital defendants in that the preclusion of lesser offenses makes it incumbent upon the state prosecutor to establish that the defendant is guilty as charged and that the defendant should receive the death penalty for the crime. If one juror is convinced that the death penalty is not proper under the circumstances, then no conviction can be obtained under the Alabama statute, although the defendant may be subject to retrial if a mistrial is declared. This Court would rather presume that jurors, especially in a capital case, will be true to their oaths and return verdicts in accordance with the facts and the law, rather than adopting petitioner's view that the jury can be expected to abdicate its responsibility.[14] Indeed, to follow the petitioner's reasoning the Seventh Amendment would become a mockery in any criminal case, since no juror could be presumed to abide by his or her oath in considering issues presented.

A different due process contention set forth by the petitioner respecting the lesser offense issue argues the instruction entitlement has been specifically required in capital cases by the Supreme Court in *Gregg*. This position evidently results from a misreading of *Gregg*, for no such requirement is present. The *Gregg* Court merely held that the jury discretion inherent in an instruction permitting conviction on a lesser offense was not unconstitutional as permitting arbitrariness and capriciousness in the jury deliberations, and in no way held that such lesser offense instructions were required. 428 U.S. at 199, 96 S.Ct. 2909, 49 L.Ed.2d at 889. This Court is convinced that the fact that each of the state schemes that have received Supreme Court approval (Georgia, Florida, and Texas) permit lesser offense instructions does not invalidate the Alabama statute in this respect as an attempted response to the *Furman* concerns

of arbitrary, capricious, or standardless jury decisions in capital cases that resulted in the death sentence being imposed freakishly and/or wantonly. And, of course, it is clear that a jury-only sentencing scheme that permits consideration of lesser included offenses is indicative of the concerns voiced in *Furman*. *See Roberts v. Louisiana*, 428 U.S. 325, 334–35, 96 S.Ct. 3001, 49 L.Ed.2d 974, 982 (1976) (plurality opinion).

A final point militating against the due process arguments advanced by the petitioner on the lesser offense issue is the fact that adequate safeguards exist within the statutory framework to ensure that no defendant who properly should be convicted of a lesser offense will be executed after imposition of the death penalty. First, assuming *arguendo* juror misconduct as alleged by the petitioner, it would still be necessary for the trial judge to weigh the aggravating and mitigating circumstances before determining whether or not to accept the sentence imposed by the jury. If the evidence does not support a conviction under the capital statute, then the trial judge should be able to ascertain this in the pre-sentence hearing and sentence the defendant to life imprisonment without parole. But perhaps the trial judge is assumed to violate his oath also. If so, then the sufficiency of the evidence must still be considered by appellate courts. In the Court's view, the only way that an Alabama defendant could possibly be executed improperly as a result of the failure to charge on lesser included offenses would be for twelve citizens to violate their oaths as jurors and for no less than eight judges to violate their oaths as jurists.

The petitioner further alleges that the preclusion of lesser included offenses violates the equal protection rights of capital defendants, since all defendants in noncapital cases have the privilege of receiving lesser included offense instructions. This

14. The only problem that the Court ascertains in this area is the practice in state courts in capital cases of not instructing the jury of their right to mistry the case. Since the statute specifically sets forth this possibility, it is prob-

ably the better practice that juries be so instructed. However, this Court is not persuaded that the failure to so instruct is constitutionally infirm.

contention is piggy-backed on the due process contention that the failure to so instruct permits juries to convict in capital cases on less than guilt proven beyond a reasonable doubt. If, of course, the evidence was that the statute had permitted juries to convict on less than proof beyond a reasonable doubt, then the statute would unquestionably be unconstitutional. *See Addington v. Texas,* —— U.S. ——, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368, 378 (1970) (Harlan, J., concurring). But here the Court has concluded that while abdication of juror responsibility is possible in any case, there is nothing in the Alabama statute that makes it more likely to occur in cases under the statute, nor does this Court assume that "juries will disobey or nullify their instructions." *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 2959, 49 L.Ed.2d 929, 942 (1976) (White, J., concurring). Thus, without piling speculation upon assumptions, it cannot be said that the Alabama statutes impose a different standard of proof in capital cases than is present in non-capital cases.

A second equal protection contention is that capital defendants are not accorded treatment equal to that of non-capital defendants, since non-capital defendants are afforded the opportunity to have juries instructed on lesser included offenses. This argument is also without merit, for the state clearly has a compelling interest in prescribing the process by which those upon whom it seeks to impose the ultimate penalty of death are to be tried. The Court has noted *supra* in connection with review of the *Keeble* decision that there is no fundamental right to a lesser offense instruction. Since this Court finds a rational basis for the state's distinction between capital and non-capital defendants, the allegations of equal protection violations are without merit.

The final argument advanced by the petitioner attacking the preclusion of lesser included offenses alleges violations of the Eighth Amendment's proscription of cruel and unusual punishment. The petitioner alleges that this portion of the statute fails to reflect "contemporary community values" and "contemporary standards of decency," an Eighth Amendment requirement. *See, e.g., Woodson v. North Carolina,* 428 U.S. 280, 294–97, 96 S.Ct. 2978, 49 L.Ed.2d 944, 955–57 (1976). Again, the petitioner piggy-backs his contention on the assumption that the Alabama system permits a conviction in capital cases on less than proof beyond a reasonable doubt. Such a system, this Court agrees, would be abhorrent to modern community values and contemporary standards of decency, but here, as noted earlier, the petitioner piles a supposition on top of an assumption to achieve the position that the burden of proof is lessened. This is simply too conjectural to bear consideration by the Court.

A second argument advanced by the petitioner on Eighth Amendment grounds contends that since Alabama is the only state that precludes lesser included offenses, it amounts to cruel and unusual punishment. This Court acknowledges that *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), indicates that legislative attitudes in other areas have some relevance to determining whether or not a certain penalty is excessive or unreasonable. The Georgia rape statute was struck down in that case as being excessive in part because Georgia was the only state that permitted the death sentence for rape. In the instant case, however, the Court is not concerned with any penal distinction between the schemes in the various states, but rather with a procedural distinction. *Coker* is in no way directed toward procedural distinctions under various death penalty statutes, and the Court is not persuaded that it has any relevance to the Eighth Amendment question in this case. The Court is convinced that the fact that Alabama is the only state that employs the procedural preclusion of lesser included offenses has no Eighth Amendment implications, and that the petitioner is entitled to no habeas corpus relief on this point.

■ In conclusion with respect to the preclusion of lesser included offenses, the

Court is content that such offenses are not constitutionally required to be submitted to the jury, that such a system does not lessen the burden of proof borne by the prosecution, that the rights of capital defendants are adequately protected by the statutory scheme, even assuming abdication of responsibility by jurors, and that the preclusion is not on its face abhorrent to either the Eighth or Fourteenth Amendments to the United States Constitution.

### B. The Sentencing Authority Under the Alabama Statute

The petitioner's second area of challenge to the constitutionality of the Alabama death penalty statute is concerned with the requirement that a capital jury that finds a defendant guilty must impose the death sentence or impose no penalty at all. The petitioner contends that this provision is conducive to arbitrary or capricious jury decisions in death penalty cases, since it permits juries to refuse to impose the death sentence in those cases in which they do not feel that the defendant deserves to die. This concern led to the rejection of mandatory death penalty statutes in North Carolina and Louisiana by the United States Supreme Court, since it was felt by the plurality of the Court that the unbridled jury discretion condemned by *Furman* could not be remedied by a mandatory statute removing all sentencing discretion from the jury, because such a statute encourages jurors to consider the harshness of the penalty while deliberating on the guilt or innocence of the capital defendant. *Woodson*, 428 U.S. at 303, 96 S.Ct. 2978, 49 L.Ed.2d at 960; *Roberts*, 428 U.S. at 335, 96 S.Ct. 3001, 49 L.Ed.2d at 982. The question for this Court is whether the Alabama statutory scheme permits such unchanneled jury discretion in capital cases as to merit the death penalty to be imposed "freakishly or wantonly." *See Furman v. Georgia*, 408 U.S. 238, 309–10, 92 S.Ct. 2726, 33 L.Ed.2d 346, 390 (1976) (Stewart, J., concurring).

At the outset, the distinctions between the Alabama statute and those struck down in *Woodson* and *Roberts* should be noted. The North Carolina statute struck down in *Woodson* made the death penalty mandatory for all first degree murders.[15] Thus the only discretion allowed the jury was the decision whether the defendant was guilty of first degree murder or some other homicide offense. The Louisiana statute struck down in *Roberts* required jury imposition of the death penalty in all cases of conviction for first degree murder, aggravated rape, aggravated kidnapping, or treason.[16]

---

15. The North Carolina statute provided that:
   *Murder in the first and second degree defined; punishment.*—A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary, or other felony, shall be deemed to be murder in the first degree and shall be punished with death. All other kinds of murder shall be deemed murder in the second degree, and shall be punished by imprisonment for a term of not less than two years nor more than life imprisonment in the State's prison.
   N.C.Gen.Stat. § 14–17 (Cum.Supp.1975), *quoted from Woodson v. North Carolina*, 428 U.S. 280, 286, 96 S.Ct. 2978, 49 L.Ed.2d 944, 950 (1976).

16. The *Roberts* plurality decision contrasted the North Carolina and Louisiana statutes:
   There are two major differences between the Louisiana and North Carolina statutes governing first-degree murder cases. First, the crime of first-degree murder in North Carolina includes any willful, deliberate, and premeditated homicide and any felony murder, whereas Louisiana limits first degree murder to five categories of homicide—killing in connection with the commission of certain felonies; killing of a fireman or a peace officer in the performance of his duties; killing for remuneration; killing with the intent to inflict harm on more than one person; and killing by a person with a prior murder conviction or under a current life sentence. Second, Louisiana employs a unique system of responsive verdicts under which the jury in every first-degree murder case must be instructed on the crimes of first-degree murder, second-degree murder, and manslaughter and must be provided with the verdicts of guilty, guilty of second-degree murder, guilty of manslaughter, and not guilty. . . . [b]y contrast, in North Carolina instructions on lesser included offenses must have a basis in the evidence adduced at trial.
   *Roberts v. Louisiana*, 428 U.S. 325, 331–32, 96 S.Ct. 3001, 3005, 49 L.Ed.2d 974, 981 (1976) (Footnote and citation omitted).

In *Woodson*, the Supreme Court struck down the statute for three, distinct reasons. First was the concern that the mandatory nature of the statute was abhorrent to contemporary standards requiring rejection of the mandatory imposition of the death penalty for every person convicted of a specified offense. 428 U.S. at 288–301, 96 S.Ct. 2978, 49 L.Ed.2d at 951–59. The Court's second concern was that the mandatory nature of the statute was conducive to unchanneled jury discretion since it permitted jurors to weigh the harshness of the penalty and thus determine, without standards, which first degree murderers should live and which should die. *Id.* at 302–03, 96 S.Ct. 2978, 49 L.Ed.2d at 959–60. Finally, the Court rejected the statute for its failure to permit consideration by the sentencing authority of the particularized aspects of the character and record of defendants upon whom the death penalty was sought to be imposed. *Id.* at 303–05, 96 S.Ct. 2978, 49 L.Ed.2d at 960–62.

While the Louisiana statute narrowed the scope of the offenses for which death could be imposed, the *Roberts* decision found the same problems that had inflicted the North Carolina statute especially "lack of focus on the circumstances of the particular offense and the character and propensities of the offender," 428 U.S. at 333, 96 S.Ct. at 3006, 49 L.Ed.2d at 981, and the failure to provide "standards to channel jury judgments [or permit] review to check the arbitrary exercise of the capital jury's de facto sentencing discretion." *Id.* at 335, 96 S.Ct. at 3007, 49 L.Ed.2d at 982.

█ Review of the Alabama statute reveals that none of the concerns leading to the reversals in *Woodson* and *Roberts* are present. At the outset, the Alabama statute is not mandatory, although the petitioner hotly contests this fact. The sentencing authority is the trial judge, not the jury, and the judge is empowered to sentence a convicted capital defendant to the death penalty or life imprisonment without pa-

role. *Ala. Code,* § 13–11–4. The Court, accordingly, does not perceive there to be any mandatory death penalties under the Alabama statute. The fact that death is the only punishment that the jury can prescribe does not put the Alabama statute on a par with North Carolina's and Louisiana's invalid statutes, since the jury is not the ultimate sentencing authority, as it was in both North Carolina and Louisiana. Nor does the Alabama scheme induce the type of unchanneled jury discretion described in *Woodson* and *Roberts*, since the Alabama juries are given the option of convicting the defendant and imposing the death penalty, mistrying the case, or returning a verdict of acquittal. The Alabama jury has no option, as did those in North Carolina and Louisiana, of deciding that the death penalty is too harsh and thus convicting the defendant of a lesser offense to avoid the imposition of such a harsh punishment. Nor is it likely that the statutory scheme will lead to capital punishment being freakishly or wantonly imposed, since it is to be imposed by the jury in every capital case in which all twelve jurors agree on that punishment, and in none other. Finally, the facet of the Alabama process permitting imposition of sentence by the trial judge is a factor present in neither *Woodson* nor *Roberts*, and is, in the opinion of this Court, a valuable aid in the sentencing process. *See Proffitt v. Florida*, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913, 923 (1976). The final factor leading to reversal in *Woodson* and *Roberts*—the lack of individualized consideration by the sentencing authority of the character and record of the defendant in each case—is not present under the Alabama statute, since Alabama requires the trial judge to consider eight aggravating and seven mitigating factors in every case before the death penalty is imposed, and the trial judge is required to enter on the record specific findings of fact with respect to these factors. *Ala. Code,* §§ 13–11–3, 4, 6, & 7. Accordingly, this Court finds nothing in the sentencing authority provided

under the Alabama statute that has been condemned in either *Woodson* or *Roberts*.[17]

In summary, the Court is not persuaded that the Alabama statute runs afoul of constitutional punishment by requiring capital juries to fix the punishment at death on a vote of conviction. The petitioner goes astray by assuming that the jury is the sentencing authority; it is not. "The jury, when deliberating on a verdict, is only concerned with the issue of the defendant's guilt or innocence." *Jacobs v. State*, 361 So.2d 640, 646 (Ala. 1978) (Torbert, C. J., concurring in part and dissenting in part). The jury, having reached a verdict, has absolutely no input into the sentencing process. This approach, adopted in response to the *Furman* concern of unchanneled jury discretion, was approved under similar circumstances in *Proffitt*, where the Florida statute was upheld. The only distinction between the Florida statute and the Alabama statute is that Florida juries are permitted to consider lesser included offenses. If a Florida defendant is convicted of a statutorily defined capital offense, the pre-sentence hearing is conducted before judge and jury and the jury's sentence, which is determined by a majority vote, is merely advisory to the trial judge, who stands as the sentencing authority. *Proffitt*, 428 U.S. at 248–49, 96 S.Ct. 2960, 49 L.Ed.2d at 920–21. The Florida statute has been upheld on constitutional grounds and this Court is content that the protections afforded by Florida are adequately and similarly afforded under the Alabama statute.

*C. The Prosecutorial Burden of Proof With Respect to Aggravating Circumstances*

The petitioner next attacks the constitutionality of the Alabama statute on the basis that the statutory sentencing scheme does not require the state to prove the existence of aggravating circumstances beyond a reasonable doubt, since a trial judge who fixes the punishment at death is required only to set out "one or more of the aggravating circumstances . . . which it finds exists" and "any of the mitigating circumstances . . . which it finds insufficient to outweigh the aggravating circumstances." *Ala. Code*, § 13–11–4(1) & (2). The petition contends that such a process is violative of the due process clause of the Fourteenth Amendment.

The petitioner correctly notes that *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), has established the rule that the sentencing process, just like the trial itself, must comport with the fundamental principles of due process:

> [I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. . . . The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.

430 U.S. at 358, 97 S.Ct. at 1205, 51 L.Ed.2d at 402 (citations omitted). The petitioner's position is that since the aggravating circumstances are elements of the punishment, proof of these elements ought to be required beyond a reasonable doubt as a fundamental due process protection.

The petitioner's position is untenable, in this Court's view, for he confuses the procedural with the substantive. Substantively, no defendant may be convicted un-

---

17. The Court also considered the Alabama sentencing authority in light of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), and finds no problem with the Alabama statute. The Ohio statute, much like the mandatory North Carolina and Louisiana statutes, precluded consideration by the sentencing authority of the particularized aspects of the defendants' character and record, and the particularized aspects of the crime itself. As noted in the text, *supra*, section 13–11–3, which requires a pre-sentence hearing, avoids this problem.

der the Alabama death penalty statute without proof beyond a reasonable doubt of a violation of some provision of section 13–11–2(a) of the *Alabama Code*. Due process entitles defendants to nothing more. Procedurally, a defendant who has been convicted of a capital crime is entitled to have the trial judge consider the statutorily prescribed aggravating and mitigating circumstances, and a trial judge imposing a death sentence is required to enter specific findings respecting such circumstances. During this process the defendant is entitled to put on evidence in favor of mitigation or in opposition to aggravation, but the petitioner here contends that the capital defendant has a fundamental right to have any aggravation present in his case to be proved beyond a reasonable doubt. If the question of aggravation in capital cases under the Alabama statute were submitted to the jury, then this Court would be inclined to follow the lead in *Spinkellink v. Wainwright*, 578 F.2d 582, 610 (5th Cir. 1978), and *State v. Dixon*, 283 So.2d 1, 9 (Fla. 1973), and rule that the jury must be instructed that aggravating circumstances must be established by proof beyond a reasonable doubt before the jury could consider such circumstances in deliberating a death sentence case. Under Alabama law, however, the trial judge is the sentencing authority upon whom rests the burden of weighing the aggravating and/or mitigating circumstances. The defendant cannot, as far as the Court can ascertain, be convicted of a capital crime under Alabama statute without proof beyond a reasonable doubt of at least one of the statutorily prescribed aggravating circumstances, since a reading of the statute reveals that the aggravating circumstances set out in section 13–11–6 actually define the capital crimes set out in sections 13–11–2(a)(1)–(14).[18]

The only problem that could result would be in an instance in which a sentencing judge considers an aggravating circumstance that is not definitional of the crime for which the defendant has been convicted, such as, for example, a judge in a robbery-murder case [§ 13–11–2(a)(2)] finding that the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function [§ 13–11–6(7)]. In this instance there would be a serious due process issue, for the proof supporting the conviction would not necessarily support the finding of the aggravating circumstance. There is no evidence before the Court that this has happened in any of the 50 or so cases that have been tried under the statute, and is not a matter for concern in this case. The Court cites the example only to acknowledge that the petitioner's concern has a conceivable basis, but not such as would require the invalidation of the entire statutory scheme.

In conclusion, this Court is of the opinion that the fact that the Alabama statute does not specifically require proof beyond a reasonable doubt of aggravating circumstances does not require invalidation of the statute. The aggravating circumstances are relevant only as guidance to the sentencing authority, they do not come into play until after the capital defendant has been convicted, and such conviction cannot be obtained without proof beyond a reasonable doubt of the capital crime, which necessarily amounts to proof beyond a reasonable doubt of the underlying aggravating circumstances. The Court does not subscribe to the petitioner's contention that this finding is sufficient to require remand of the forty-three death sentences presently being served in Alabama for consideration by the

---

**18.** This is precisely the rationale adopted by the Florida Supreme Court in *State v. Dixon*, 283 So.2d 1, 9 (Fla.1973):

> The aggravating circumstances of Fla.Stat. § 921.141(6) [sic], F.S.A., actually define those crimes—when read in conjunction with Fla.Stat. §§ 782.04(1) and 794.01(1), F.S.A.—to which the death penalty is applicable in the absence of mitigating circumstances. As

such, they must be proved beyond a reasonable doubt before being considered by judge or jury.

This Court notes that the aggravating circumstances set out by the Florida Statute, Fla.Stat. § 921.141(5), are with a minor exception, identical to those set out in the Alabama Statute, *Ala. Code* § 13–11–6.

various trial courts of whether any of the statutory circumstances were established beyond a reasonable doubt. As the Fifth Circuit noted in *Spinkellink, supra* at 610, this position is without merit for the jury verdict indicates that the aggravating circumstance underlying the capital crime was proved beyond a reasonable doubt.

### D. The Delayed Sentencing Procedure

The petitioner contends that the Alabama process of vesting sentencing discretion in the trial judge following a jury verdict of guilty and jury imposition of the death penalty is constitutionally impermissible because it places upon the judge the intolerable burden of opting between a mere acquiescence in the jury's verdict or a refusal to accept a publicly pronounced unanimous verdict rendered by twelve members of the citizenry from which he is elected.

■ At the outset, the petitioner mischaracterizes the issue when he asserts that "the judge is thus placed in the exposed position of having to override the jury's death sentence, and to take the public heat of 'refusing to accept' a death sentence, in order to give the defendant the benefit of the sentencing hearing which is his constitutional due." Such reasoning assumes that the jury reached the decision to impose the death sentence after deliberations that included consideration of various other sentences. That is not the case in Alabama, where the jury's only duty is to determine the guilt or innocence of the capital defendant; a finding of guilt requires the jury to impose the death penalty to the exclusion of any other punishment. The Alabama sentencing authority is the trial judge and, accordingly, the jury verdict as to punishment must be characterized as advisory. This is similar to the Florida capital punishment scheme, except that in Florida the jury has the benefit of the pre-sentence hearing before they reach a verdict, they

are not compelled to return a sentence of death, and the sentence is decided by a majority of the panel. *Proffitt*, 428 U.S. at 248–49, 96 S.Ct. 2960, 49 L.Ed.2d at 920–21. The Florida framework was upheld in *Proffitt*, and this Court is not persuaded that the burden on an Alabama sentencing judge is any different from that on a Florida sentencing judge. Nor is the Court persuaded that a sentencing judge would abdicate his responsibility for political expediency as the petitioner suggests, since the record indicates that trial judges have on various occasions reduced jury imposed death sentences to life imprisonments without parole.[19] Accordingly, the Court is content that the petitioner's contentions on this point are without merit.

### E. The Statutory Limitations on Mitigating Circumstances

■ The petitioner next contends that the Alabama statute is unconstitutional to the extent that it delimits the mitigating circumstances that the sentencing authority may consider and weigh against the aggravating circumstances in making a sentence determination in a capital case. There is no question but that a statute that precludes consideration of relevant mitigating circumstances is unconstitutional:

[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor*, any aspect of the defendant's character or record and any of the circumstances of the offense that the defense proffers as a basis for a sentence less than death. . . . [W]e cannot avoid the conclusion that an individualized decision is essential in capital cases. . . . [A] statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's char-

19. The stipulation between the parties reflects that there have been 22 cases under the statute in which the defendant received life imprisonment without parole. Thirteen of these sentences were the result of guilty pleas, while the other nine defendants were convicted at trial after a not guilty plea. In seven of the nine cases the state actively sought the death sentence, but in each of those cases the jury-imposed death sentence was reduced to life imprisonment without parole. Those seven cases were handled by four different trial judges.

acter and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.

*Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990 (1978) (Emphasis in original) (Footnote omitted). Thus, it is clear that a statute which unduly limits the sentencer's authority in inquiring into mitigating factors cannot pass constitutional muster.

▆▆▆▆ The petitioner contends that the seven mitigating factors set out in the Alabama statute, *Ala.Code* § 13–11–7, are exclusive, relying upon the opinion of one member of the Supreme Court of Alabama. In *Jacobs v. State,* 361 So.2d 640 (Ala.1978), Chief Justice Torbert stated in a separate opinion that:

> The list of mitigating circumstances in section 13–11–7, Code of Alabama 1975, is exclusive, and the grounds argued by the petitioner do not fit within any of the seven enumerated factors in that section.

*Id.* at 648 (Torbert, C. J., concurring in part and dissenting in part). This Court, however, cannot be guided by one justice's opinion that forms no part of the opinion of the Court, especially when that opinion is directly contrary to the language of the statute. Section 13–11–3 provides, with respect to the pre-sentence hearing, that:

> In the hearing, evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13–11–6 and 13–11–7. Any such evidence which the court deems to have probative value may be received
> . . . . .

The legislature clearly intended that the sentencer be permitted to consider any mitigating factor, not just those set out in the statute. Indeed, on rehearing in the *Jacobs*

case, *supra,* six justices of the Alabama Supreme Court clarified the issue by quoting section 13–11–3 and emphasizing the portion respecting the introduction of any evidence and not just that reflecting upon the mitigating factors. *Jacobs v. State,* 361 So.2d 640, 652 (Ala.1978). The Supreme Court reaffirmed this position in *Ex parte Cook,* 369 So.2d 1251 (Ala.1978), where a death sentence was reversed and remanded to the trial court for a new sentence hearing in which the trial court was to consider any mitigating factor, not just the statutory factors. Since the case law reveals that the Supreme Court of Alabama has read the statute as permitting consideration of any relevant mitigating factor, this Court is of the opinion that the petitioner's contentions on this point are without merit.[20]

### F. Appellate Review Under the Alabama Statute

The petitioner next challenges the statutorily prescribed appellate review in death penalty cases, arguing that the Alabama scheme is not compatible with the level of review determined to be necessary in such cases by *Gregg, Proffitt,* and *Jurek.* The petitioner apparently takes the position that the statute is fatally defective for failing to require Alabama appellate courts to engage in the form of comparative review required of the Georgia Supreme Court in death penalty cases.

Under the Georgia statute, the Georgia Supreme Court automatically reviews every case in which the death penalty is imposed and is directed by statute to consider the punishment and any errors enumerated in the appeal, and the Court is further directed to ascertain whether the jury verdict was imposed under the influence of passion, prejudice, or any other arbitrary factor, whether the evidence supports the jury's or the judge's findings of statutory aggravating circumstances, and whether the sen-

---

**20.** Even if the Court concluded that the Alabama process did run afoul of *Lockett,* it is unlikely that such a finding would be of any benefit to the petitioner. This is true because the record is clear that in the petitioner's case the trial court actually did consider a mitigating

circumstance not enumerated in the statute in reaching its decision on punishment. *Evans·v. State,* 361 So.2d 654, 664 (Ala.Cr.App.1977). Certainly the trial judge here was not encumbered by any *Lockett*-condemned considerations.

tence is excessive or disproportionate to the penalty imposed in similar cases. *Ga.Code Ann.* § 27–2537 (Supp.1975), *cited in Gregg v. Georgia,* 428 U.S. 153, 166–67, 96 S.Ct. 2909, 49 L.Ed.2d 859, 871 (1976). Additionally, when the death sentence is affirmed, the Georgia Supreme Court is required to include in its decision reference to similar cases that it has taken into consideration. *Ga.Code Ann.* § 27–2537(e) (Supp.1975). In considering the statutory review procedure in *Gregg,* the Supreme Court of the United States reasoned that:

> The provision for appellate review in the Georgia capital-sentencing system serves as a check against the random or arbitrary imposition of the death penalty. In particular, the proportionality review substantially eliminates the possibility that a person will be sentenced to die by the action of an aberrant jury. If a time comes when juries generally do not impose the death sentence in a certain kind of murder case, the appellate procedures assure that no defendant convicted under such circumstances will suffer a sentence of death.

*Gregg,* 428 U.S. at 206, 96 S.Ct. at 2940, 49 L.Ed.2d at 893.

While the Georgia process is laudable in establishing objective sentencing standards, the process was by no means required as a constitutional matter by the *Gregg* decision. The Florida appellate process upheld in *Proffitt,* for instance, provides for automatic review of death sentence cases by the Florida Supreme Court, but does not require that court to conduct any specific form of review. *Fla.Stat.* § 921.141(4) (Supp.1976–77), *cited in Proffitt v. Florida,* 428 U.S. 242, 250, 96 S.Ct. 2960, 49 L.Ed.2d 913, 922 (1976). The Supreme Court noted in *Proffitt,* however, that by judicial construction the review function of the Florida Supreme Court is similar to that of the

Georgia Supreme Court. 428 U.S. at 251, 96 S.Ct. 2960, 49 L.Ed.2d at 922, *citing State v. Dixon,* 283 So.2d 1, 10 (Fla.1973).[21]

Conspicuously absent from the petitioner's brief on the review issue is any mention of the review procedures under the Texas statute upheld in *Jurek.* The statute provides only for expedited review of death penalty decisions by the Texas Court of Criminal Appeals, without defining the review function of that Court. *Tex.Code Crim.Proc.,* Art. 37.071(f) (Supp.1975–76), *cited in Jurek v. Texas,* 428 U.S. 262, 269, 96 S.Ct. 2950, 49 L.Ed.2d 929, 937 (1976). The Supreme Court was apparently satisfied that the limited circumstances under which the death penalty might be sought would serve to insure that the death penalty would be "imposed for the most serious crimes [and] . . . that [it] will only be imposed for the same type of offenses which occur under the same types of circumstances." 428 U.S. at 270, 96 S.Ct. at 2955, 49 L.Ed.2d at 937, *quoting State v. Jurek,* 522 S.W.2d 934, 939 (Tex.Cr.App. 1975).

■ It is apparent that the question for this Court is whether the review procedure adopted by the Alabama statute properly requires appellate courts in capital cases to conduct their review in such a manner as will ensure that the death penalty is imposed only for the most serious crimes and only in circumstantially similar cases. This Court is of the opinion that the Alabama procedure does permit such comparative review and accordingly does not run afoul of *Gregg, Proffitt,* or *Jurek.*

As noted above, any death penalty is automatically reviewed by the Alabama Court of Criminal Appeals, even where, as with the petitioner here, the defendant does not

---

**21.** In *Dixon,* the Florida Supreme Court defined its own function in reviewing death penalty cases:

> Review by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case. No longer will

one man die and another live on the basis of race, or a woman live and a man die on the basis of sex. If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great.

*State v. Dixon,* 283 So.2d 1, 10 (Fla.1973).

desire such review.[22] *Ala.Code* § 13–11–5; *see also* §§ 12–22–150 & 12–22–243. Additionally, by judicial rule-making power, the Alabama Supreme Court is required to review any death penalty decision for which a writ of certiorari is sought. *Ala.R.App. Proc.* 39(c). The case law under the Alabama statute makes it clear that the petitioner's contention that Alabama appellate courts do not engage in comparative review is without merit. In the very first case to interpret the statute, *Jacobs v. State,* 361 So.2d 640 (Ala.1978), the Alabama Supreme Court acknowledged its responsibility to consider the circumstances of other death penalty cases in reaching its decision:

> The Court of Criminal Appeals has spelled out specifically how death sentences, reviewed under Alabama's automatic appeal statute, have been reversed and remanded for new trials. This Court has carefully reviewed each point raised by the accused in his petition, which was granted as a matter of right because of the sentence of death. We are familiar with other cases reviewed by this Court in the last decade involving death sentences and we are convinced that the sentence here was not arbitrary or capriciously entered.

*Id.* at 644–45. In *Clements v. State,* 370 So.2d 708 (Ala.Cr.App.1978), the Alabama Court of Criminal Appeals specifically rejected the contention advanced by the petitioner here. Further, *Beck v. State,* 365 So.2d 985 (Ala.Cr.App.1978), stands as a specific example of comparative review by the Alabama Court of Criminal Appeals, which, after reviewing the facts, noted that "[t]he facts in this case, after a careful evaluation, show a marked similarity with those in *Jacobs v. State,* supra. . . . It seems to us that the result is inescapable that the punishment, too, should be the same." *Id.* at 1005.

Besides comparative review, it is clear that the Alabama appellate courts have devised another safeguard for capital defendants—independent appellate weighing of the aggravating and mitigating circumstances in each case. *Evans v. State,* 361 So.2d 654, 662 (Ala.Cr.App.1977). The Alabama Court of Criminal Appeals has specifically recognized its responsibility to do this on at least three occasions, *see Neal v. State,* 372 So.2d 1331 (Ala.Cr.App.1979); *Thomas v. State,* 369 So.2d 71, 72 (Ala. Cr.App.1979); *Beck v. State,* 365 So.2d 985, 1005 (Ala.Cr.App.1978), and various convictions have been reversed and remanded for trial court improprieties in conducting the sentencing hearing. *E.g., Keller v. State* (Ala.Cr.App.1979); *Ex Parte Cook,* 369 So.2d 1251 (Ala.1978).

The record is clear that the review scheme permitted by the Alabama death penalty is compatible with the teachings of *Gregg, Proffitt,* and *Jurek,* since the process ensures the adequacy of the trial and sentencing process and that the death sentence will be imposed uniformly for similar serious offenses, rather than freakishly or wantonly, as condemned by *Furman.*

## G. Mandatory Nature of the Alabama Statute

The petitioner's final argument contends that, in spite of the fact that the Alabama statute is not on its face a mandatory death penalty statute, it has become by application an invalid mandatory statute of a nature condemned by *Woodson* and *Roberts.*

The petitioner predicates his argument upon a statistical analysis of the 65 cases tried under the present death penalty law in which sentence hearings have been held. In fifteen of the cases the prosecutor did not seek the death penalty at the sentence hearing, but such punishment was actively sought in the other 50 cases. In 43 of these 50 cases the jury verdict of death was allowed to stand, while the other seven defendants received life imprisonment without parole. The petitioner argues that this 86% death penalty rate upon conviction

---

**22.** In case of a conviction and imposition of life imprisonment without parole, the appeal is not automatic but rather must be pressed by the defendant. *See, e.g., Neal v. State,* 372 So.2d 1331 (Ala.Cr.App.1979).

stands as evidence that Alabama possesses a mandatory death penalty statute, contending that the figure indicates that trial judges are merely satisfying the unguided mandatory sentences returned by juries.

■ This argument is similar to that advanced in *Spinkellink v. Wainwright*, 578 F.2d 582, 604–605 (5th Cir. 1978), where the petitioner contended that the admittedly constitutional statute [23] was being applied in an arbitrary and capricious manner. After considering the possibility that permitting collateral attacks in death penalty cases that seek to go behind a facially valid statute would result in every substantive decision of a state court in a capital case being tried *de novo* in other courts, the Fifth Circuit concluded that:

> The Supreme Court in *Proffitt*, or in *Furman, Gregg, Jurek, Woodson* or *Roberts*, could not have intended these results. We understand these decisions to hold that capital punishment is not unconstitutional per se, and that a state, if it chooses, can punish murderers and seek to protect its citizenry by imposing the death penalty—so long as it does so through a statute with appropriate standards to guide discretion. If a state has such a properly drawn statute—and there can be no doubt that Florida has—which the state follows in determining which convicted defendants receive the death penalty and which receive life imprisonment, then the arbitrariness and capriciousness condemned in *Furman* have been conclusively removed.

*Id.* at 605 (footnote omitted). Admittedly, the petitioner here does not allege that application of the Alabama statute has been arbitrary or capricious in violation of *Furman*, but rather that it has been mandatory in violation of *Woodson, Roberts*, and *Lockett*. The Court, however, is not persuaded that any distinction exists. This Court is content that the Alabama death penalty process is constitutional under the decided cases and the fact that application of the constitutional process has resulted in a high rate of death penalty imposition does not serve to invalidate the constitutional process. Accordingly, the Court is of the opinion that the petitioner's contentions on this point are without merit.

■ The petitioner has introduced other statistics indicating that while the death sentence is imposed in only 18.6% and 14.7% of the felony murder cases brought under the constitutional statutes in Florida and Georgia, respectively, it has been imposed in 38.5% of the cases brought under the Alabama statute. Further, the death sentence has been imposed in only 43.3% of such cases in Florida and 27.2% of such cases in Georgia. While such figures do indicate a greater likelihood of execution for capital defendants in Alabama, they do not, in this Court's perception, reveal any constitutional infirmity in the Alabama system. There is no constitutional requirement of numerical or percentile equality in the sentencing procedures in various states; indeed, were the Alabama figure 100% this Court would not be constrained to find the system unconstitutional in the absence of specific evidence of impermissible procedures. The Court is convinced that the fact that the Alabama statute carries a greater likelihood of imposition of the death penalty simply has no relevance to the constitutionality of the statute—it could well be that Florida and Georgia are improperly applying their constitutional statutes, or the reason for the large disparity could be any of a large number of other reasons. This Court is simply unwilling to accept an impact test in passing upon the constitutionality of a state statute, where the text reveals only differing results from those cases in other jurisdictions.

### III.

*Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), determined, for various reasons, that the imposition of the death penalty in many cases constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Two justices con-

---

**23.** The Florida statute had previously been upheld in *Proffitt*.

sidered the punishment cruel and unusual per se, 408 U.S. at 257, 314, 92 S.Ct. 2726, 33 L.Ed.2d at 360, 393 (Brennan & Marshall, JJ., concurring), one concluded that the punishment was being applied in a discriminatory manner, 408 U.S. at 240, 92 S.Ct. 2726, 33 L.Ed.2d at 350 (Douglas, J., concurring), while two others were troubled by the apparent arbitrariness and capriciousness with which the punishment was imposed. 408 U.S. at 306, 310, 92 S.Ct. 2726, 33 L.Ed.2d at 388, 390 (Stewart & White, JJ., concurring).

The Alabama statute was adopted in the hope of eliminating the arbitrariness and capriciousness spoken of in *Furman*, and this Court is of the view that such purposes have been achieved. Since *Furman*, the Supreme Court has expressed in *Gregg* and its companion cases the requisites of a constitutional death penalty system. First, the irretrievable nature of the death penalty requires special precautions in the process. *Gregg*, 428 U.S. at 188, 96 S.Ct. 2909, 49 L.Ed.2d at 883. The Alabama framework certainly provides such special precautions, by limiting the types of felonies for which the punishment is authorized, by requiring unanimous jury agreement on the penalty to be imposed, by providing guidelines for the sentencing authority, and by providing various safeguards in the appellate review system. The "untrammeled jury discretion" which concerned Justice Douglas in *Furman* has been eliminated by placing sentencing authority with the trial judge, leaving the jury only to decide guilt or innocence. The bifurcated procedure "is more likely to ensure elimination of the constitutional deficiencies identified in *Furman.*" *Gregg*, 428 U.S. at 192, 96 S.Ct. at 2926, 49 L.Ed.2d at 885. This Court is content that the leading distinction between *Furman* and *Gregg* is that in *Gregg*, the Georgia legislature had provided "an adequate means of controlling the necessary exercise of jury discretion." *England, Capital Punishment in the Light of Constitutional Evolution : An Analysis Between Furman and Gregg*, 52 Notre Dame Law, 596, 604–05 & n.59 (1977). The Court here perceives no problem with jury discretion under the Alabama statute. The *Gregg* decision also favorably noted the Georgia appellate scheme as being a safeguard against many of the *Furman* problems, 428 U.S. at 198, 96 S.Ct. 2909, 49 L.Ed.2d at 888, and the Alabama statute, though admittedly different in some respects, effectively provides the same safeguards.

In conclusion, the Alabama scheme requires as a prerequisite to imposition of the death penalty that a defendant be convicted by a jury of a specified homicide offense of an aggravated nature and that the trial judge enter specific findings as to the particularized aspects of the case, with adequate appellate procedures to safeguard the process. The Court is content that there is no longer "no meaningful basis for distinguishing the few cases in which [capital punishment] is imposed from the many cases in which it is not." *Furman*, 408 U.S. at 313, 92 S.Ct. at 2764, 33 L.Ed.2d at 392 (White, J., concurring). Accordingly, the petition for writ of habeas corpus is hereby DENIED, and the stay of execution heretofore entered on April 20, 1979 is hereby DISSOLVED.